PETERS, Plaintiff in Error, v. THE ST. LOUIS AND IRON MOUN-
TAIN RAILROAD CO., Defendant in Error.

1. Sec. 12 of the " Act to authorize the formation of railroad associations and
to regulate the same," approved February 24th, 1853, (Sess. Acts, 1853, p.
128,) is applicable to the St. Louis and Iron Mountain Railroad Company,
and to all other railroad companies existing under a law of the state.
2. It is constitutional in its application to railroad corporations previously
created.

### Error to St. Louis Law Commissioner's Court.

The petition in this cause is as follows : '' The plaintiff states
that Emil Rebhan was a contractor with the defendant from
some time previous to the first day of December, 1854, to the
20th of March, 1855, for the construction of that part of the
said railroad, in said county of St. Louis, which lies between
a point about two hundred feet south of the River des Peres
and McGilton's stone quarry, and which is now, and has been
for more than a year, in progress of construction ; and that
the following persons respectively performed for said contrac-
tor, as laborers, in constructing said railroad, the following
services, at the following times, and for the following prices,
rates and amounts, to-wit:

| NAMES. | No. of days. | WORKING TIME. | | | Rate per day. | AM'T. |
|---|---|---|---|---|---|---|
| | | | | 1855. | | |
| Anton Kramer | 11½ | From Feb. 10 to Mar. 10, | | | $1 00 | $11 50 |
| George Weiland | 9 | " " 28 " 20, | | | 1 25 | 11 25 |
| Jacob Mueller | 9½ | " " 22 " 12, | | | 1 00 | 9 50 |
| Christian Kehling | 13 | " " 12 " 19, | | | 1 00 | 13 00 |
| Johann Zepp | 19¾ | " " 7 " 10, | | | 1 00 | 19 75 |
| Joseph Rederer | 10 | " " 12 " 13, | | | 1 50 | 15 00 |
| E. Freudeuruh | 10 | " " 12 " 13, | | | 1 00 | 10 00 |
| Jacob Rause | 10 | " " 22 " 20, | | | 1 25 | 12 50 |
| Franz Wiegdo | 7 | " " 28 " 20, | | | 1 00 | 7 00 |
| Larez Speidder | 10 | " " 10 " 20, | | | 1 00 | 10 00 |
| Barnbored | 9 | " " 27 " 17, | | | 1 00 | 9 00 |
| George Puempel | 15 | " " 15 " 20, | | | 1 00 | 15 00 |
| Martin Schultheep | 6 | " " 27 " 10, | | | 1 00 | 6 00 |

" The plaintiff further states, that each of said laborers gave notice, in writing, to the said company, within twenty days after the performance of the number of days' labor for which the claim herein set forth is made ; that is to say, each of said notices was given by said laborers respectively on the 28th day of March, 1855, and each of said notices stated the amounts respectively and number of days' labor, and the time when said labor was performed for which each claim herein set forth is made, and the said name of said contractor, from whom due, and was signed by each of the laborers, or his attorney, giving said notice, were, on said 28th day of March, 1855, personally served on John Kelly, an engineer employed by said company, having charge of the section of said road on which said labor was performed, as aforesaid ; and duplicates of each of said notices are filed with the petition, that all of the respective amounts herein set forth, as aforesaid, as due to said laborers respectively, are yet unpaid ; that said company thereby then and there became liable to pay each of said laborers their respective amounts herein set forth, as aforesaid, according to the provisions of the twelfth section of an act of the general assembly of the state of Missouri, entitled " An act to authorize the formation of railroad associations, and to regulate the same," approved February 24, 1853 ; that after said 28th day of March, 1855, and after the said engineer was served, as aforesaid, and before the commencement of this suit, to-wit, on or about the 19th day of April, 1855, all of said laborers assigned and transferred to the plaintiff all their respective rights, titles and interests of, in and to said several amounts of indebtedness, hereinbefore set forth and described, which said assignments and transfers are filed with the petition ; and by virtue of said assignments and transfers, and in his own right, plaintiff is entitled to recover of the defendant the aggregate amount of one hundred and forty-nine dollars and fifty cents, which is yet due to the plaintiffs, and unpaid. The plaintiff, therefore, asks for judgment against the defendant, for said sum of one hundred and forty-nine dollars and fifty cents, and

for lawful interest thereon, and for costs of suit; and the plaintiff also asks for such other further and general relief in the premises as he may be lawfully entitled to."

This petition was demurred to, and the following grounds of demurrer assigned:

"Defendant says that plaintiff does not state facts sufficient to give him a cause of action, in this, that, 1. He does not allege that defendant is a company incorporated under the provisions of the "Act to authorize the formation of railroad associations, and to regulate the same," approved 24th February, 1853. 2. Any law subjecting said defendant to the lien claimed by plaintiff is contrary to the constitution of the United States, as it would alter the charter previously granted defendant by this state, and take private property for public purposes. 3. The lien claimed by plaintiff is a personal privilege of the laborers, not assignable. 4. The petition does not set out, nor is there filed with it, the alleged contract of defendant with Rebhan. 5. Plaintiff has not filed with his petition the powers of attorney by which some of the laborers named in his petition are alleged to have made agents to transfer their claims. 6. The instrument filed with the petition, as transfers by such laborers, are, on their faces, not transfers of the debts claimed by such laborers. 7. The notices are not directed to defendant."

The court sustained the demurrer, and gave judgment thereon for defendant, whereupon the cause was brought here by writ of error.

*Casselberry*, for plaintiff in error.

*T. C. Reynolds*, for defendant in error.

I. The law of February 24th, 1853, relates exclusively to roads chartered under it, except where other roads are expressly named.

II. If the St. Louis and Iron Mountain Railroad Company is embraced by the 12th section of the act of February, 1853, there is a violation of the charter of the company, and the provisions of said act are void as impairing the obligation of a

contract. The charter of the company was irrepealable. (Sess. Acts, 1853, p. 296 ; Terrett v. Taylor, 9 Cranch, 43 ; Sturgess v. Crowninshield, 4 Wheat. 122, N. Y. Bankrupt Law ; McMillan v. McNeal, ib. 209, same principle ; Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, p. 59, note 6, 558, 557, 581, 663–4, 694, 702 ; Farms. & Mechs. Bank of Pa. v. Smith, 6 Wheat. 121, Insol. Law ; 2 Gallison, 105, 142–3 ; Bonaparte v. Camden & Amboy R. R. Co. 1 Baldwin C. C. R. 219 ; Boyle v. Zacharie & Turner, 6 Pet. 348 ; Charles River Bridge v. Warren Bridge, 11 Pet. 420 ; Culder v. Bull, 3 Dallas, 386 ; Van Horn's lessee v. Dorramee, 2 Dallas, 304 ; Green v. Biddle, 8 Wheat. 1 ; Satterlee v. Mathewson, 2 Pet. 380 ; Wilkinson v. Leland, ib. 657.)

LEONARD, Judge, delivered the opinion of the court.

The questions we have here to deal with are, whether the 12th section of the general railroad law of 24th February, 1853, is applicable to all railroad companies existing under the laws of this state, or is confined to such as are incorporated pursuant to that act ; and supposing it to be applicable to all companies, then whether its provisions are constitutional, especially in reference to the present company, whose charter, it is said, is expressly exempted from legislative control.

The *words* of the section are general, and, in their literal meaning, equally applicable to every railroad company, no matter where or how created ; whether before or after the passage of the act, or pursuant to it, or by express legislative grant ; and if we adopt the grammatical interpretation which is based on the words of the law, they embrace the present and all other companies, both existing and future. The reason of the law, too, which was the necessity and propriety of securing to manual laborers, depending upon their daily labor for their daily bread, the fruits of their toil, was equally applicable to all railroad laborers, without distinction ; and it is quite impossible to suppose that the legislature intended to make one

Peters v. The St. Louis and Iron Mountain Railroad Co.

which should exclude from the benefit of the law the laborers upon all the main lines of railroad, then incorporated, and to embrace only laborers on roads to be afterwards undertaken under the general law; and here, therefore, that interpretation that is based upon the spirit of the law, corresponds with the grammatical construction. Indeed, the only ground for doubting the propriety of this interpretation, is the fact, that the legislature have, in the last section of the act, expressly subjected all railroad companies, present and future, to certain specified sections of the law, and omitted to include in this enumeration the section now under consideration; but we think this circumstance can not be allowed to control the otherwise palpable intention of the legislature, shown both by the words and the reason of the law.

In reference to the remaining questions, we remark, that this law is a copy of the New York general railroad law of 1850, and that the 12th section of our act corresponds literally with the 12th section of theirs; and although this has been under discussion in the courts of that state, where it is held to apply to laborers employed by sub-contractors, as well as to those employed by original contractors, yet its constitutional validity has never been questioned, (Kent v. New York Cent. R. R. Co. 2 Kernan, 628); nor, indeed, do we see any ground whatever for doing so. Undoubtedly our constitution, in common with all other American constitutions, secures private property against legislative confiscation; but there is nothing of that character in this law. It is substantially the provision of the St. Louis mechanics' lien law, and other similar laws common everywhere, except that the security provided by those laws is a lien upon the *specific property*; here, it is a lien upon the *party benefitted* by the labor, in the shape of a personal obligation to pay what in the other cases is secured only by the charge laid upon the property. It seems altogether equitable that these small sums that are falling due, from day to day, to laborers, for work done upon a road, under a contract with the company's contractor, should be secured to them

under proper restrictions—either by a lien upon the road itself, or by the more convenient personal liability of the corporation, which, in practice, is quite as safe to the laborer, and certainly not more burdensome to the company ; and these laws, operating prospectively, do not arbitrarily impose this liability, but, having declared beforehand under what circumstances the company shall become liable to the laborer, the obligation arises against them under the law out of the act of the person to whom they have let the work. Nor is there any hardship in it, as the company, at the time of contracting, can indemnify themselves against the liability to which their contractor may thus subject them, either by a bond of indemnity, or a stipulated delay in the payment of part of the contract price.

We remark, in conclusion, that the charter of the company is not altered or at all touched by subjecting them to this liability. All persons, corporations as well as natural persons, are subject to the general law of the land, and this company is not exempted from that obedience by the suggested exemption of its charter from legislative alteration. Here is no attempt to deprive them of their property, or to encroach upon their chartered privileges, but to subject them to a general law, made for the government of all persons of this class.

The judgment is reversed, and the cause remanded.