## HENRY A. TRANBARGER v. CHICAGO & ALTON RAILROAD COMPANY, Appellant.

### In Banc, May 10, 1913.

1. **POLICE POWER: Power of State to Contract Away.** The police powers of the State are divisible into two classes: First, such rights of internal regulation of its affairs as do not touch the vital question of health, morals or property of the people. These the State may part with, because their retention is not indispensable to the preservation of society. Second, all powers of government which are indispensable for the regulation of the public health, welfare and property rights of its people. These the State cannot strip itself of, for to do so would be to render it incapable of carrying out the primary purpose of its creation. The only restriction upon the exercise of those sovereign rights is that their use must be reasonably adapted to the ends for which they are given, and that they shall not infringe upon any right or privilege guaranteed by the Constitution of the United States.

Tranbarger v. Railroad.

2. ———: ———: **Overflowing Lands: State Charter: Prescription: Act of 1907.** The fact that defendant railroad company was granted a charter by the State in 1873 and that the laws did not then require railroad corporations to construct outlets through their roadbeds or embankments for the flow of surface water, did not, by prescription or otherwise, vest defendant with any such vested right as to make the then state of the law a part of an irrevocable contract between it and the State, nor prevent the State in 1907 from enacting a statute requiring such outlets to be constructed. No contract with the State, whether by charter or otherwise, and no prescriptive right, can be invoked to thwart the exercise by the State of its sovereign power and duty to conserve the health, morals or property of the people. The Act of March 14, 1907, Laws 1907, p. 169, which was an amendment to Sec. 1110, R. S. 1899, was enacted to prevent lands traversed by railroads from being injured by the construction or maintenance of an embankment which would obstruct the flow of water and cause it to flood such lands and destroy the corps thereon; and was, therefore, an exercise of an inalienable police power.

3. **RAILROAD EMBANKMENT: Existence of Drains: Question for Jury.** Where there is substantial evidence that there was a drain or watercourse with which the outlets or drains through defendant's roadbed might have been connected, the question becomes one for the jury, and its findings on the point are conclusive.

4. ———: **No Outlets: Flood: Concurring With Defendant's Negligence.** Notwithstanding the waters of the Missouri river overflowed its banks and rose in places to the dimensions of a flood, yet if there is substantial evidence that these abundant waters were not the sole cause of the injury to plaintiff's crops, but that defendant's failure to construct outlets through its roadbed concurred with them to cause the injury, defendant is liable.

5. **INSTRUCTIONS: Mutual Error.** An error common to both plaintiff's and defendant's instructions is not reversible error.

6. ———: **Supplied by Defendant's.** An omission or imperfection in an instruction given by plaintiff is supplied by a clear, full and definite instruction given for defendant.

6. ———: **Ditches on Both Sides of Railroad Track: Surplusage.** Where the undisputed evidence was that plaintiff's lands which were overflowed were wholly on one side of the railroad embankment or roadbed, and the contention at the trial was as to the duty of defendant to construct suitable drains and ditches on that side, an inadvertent reference in the instruction for plaintiff to defendant's duty to construct suitable ditches or drains on each side, did not mislead the jury.

7. RAILROAD EMBANKMENT: No Outlet: Extreme Penalty. The full penalty of $500 imposed by the Act of 1907 for failure by a railroad company to construct outlets through its roadbed for overflow surface waters, should be imposed only in extreme cases, when the accumulation of waters injuring the crops or lands of adjacent land-owners is shown to be certain to occur at frequent intervals, thereby necessitating an immediate construction of such openings; and accordingly, the penalty of $500 imposed by the verdict of the jury, in this case, is reduced to $100.

· 8. ————: Testimony: Conclusion of Witness. Although the question asked of a witness may call for a conclusion to be found by the jury, yet if his answer and the subsequent questions are confined to specific facts, the examination is not reversible error.

Appeal from Cole Circuit Court.—*Hon. William H. Martin,* Judge.

AFFIRMED (*as modified*).

*Scarritt, Scarritt, Jones & Miller* for appellant.

(1) The charter and franchise constitutes a contract between the State and the Louisiana & Missouri River Railroad Company and its privies, that is, its lessee. United States v. Railroad, 118 U. S. 327. That a legislative grant is a contract has been repeatedly ruled. Terrill v. Taylor, 9 Cranch, 50; Pawlett v. Clark, 9 Cranch. 332; Dartmouth College v. Woodward, 4 Wheat. 656; Charles River Bridge v. Warren Bridge, 11 Peters, 603; Walla Walla v. Water Co., 172 U. S. 9; Hovel v. Kansas City H. R. Co., 79 Mo. 632; State ex rel. v. Gas Co., 104 Mo. 472. It was not the law of Missouri at the time that franchise was granted, and this railroad built thereunder, that the railroad had to construct ditches or drains through its roadbed to carry off surface water. The statute requiring such drains through railroad beds to provide for surface water was not passed until 1907. Laws 1907, p. 169. At the time defendant's franchise was granted and the road built, the law of Missouri was that surface water

was a common enemy against which every land-owner, including a railroad, should protect himself as best he could. McCormick v. Railroad, 57 Mo. 433; Paddock v. Somes, 102 Mo. 226; Ready v. Railroad, 98 Mo. App. 467. The law of Missouri at that time must be read into and forms a part of the contract made by the railroad company with the State. The grant of a franchise to a railroad company carries with it the right to make necessary embankments for its roadbed. Benson v. Railroad, 78 Mo. 504. In addition to this, defendant has acquired a prescriptive right to maintain this solid embankment by reason of the fact that it has been so maintained for over thirty years. Smith v. Sedalia, 152 Mo. 283; Powers v. Railroad, 71 Mo. App. 540; Bird v. Railroad, 30 Mo. App. 365; Ridley v. Railroad, 24 S. E. 730. An attempt by mere statute, without condemnation proceedings or other process of law, to require defendant to reconstruct its railroad at this time and to give an easement through and across its right of way for a watercourse or surface water drainage is, therefore, unconstitutional for two reasons. In the first place, it impairs the obligation of the contract between the State and this railroad, and, in the second place, it would be taking defendant's property without due compensation. Railroad v. Gordon, 157 Mo. 71. (2) There was no drain or watercourse with which to connect railroad ditches or openings. Under the statute upon which this action is based, Sec. 1110, R. S. 1899, as amended by Laws 1907, p. 169, a railroad company is not required to construct openings or ditches either through or alongside its railroad unless there are other "ditches, drains or watercourses" with which the railroad company may connect its ditches or drains and thereby carry away the water. Field v. Railroad, 21 Mo. App. 600; Collier v. Railroad, 48 Mo. App. 398; DeLapp v. Railroad, 69 Mo. App. 572; Graves v. Railroad, 69 Mo. App. 574. (3) The dam-

age to plaintiff in question was caused by a flood. It was not caused by ordinary surface water obstructed in its usual flow by the construction of its roadbed. Under section 1110 in question a railroad company is required only to provide ditches or drains through and alongside its roadbed sufficient to take care of the usual and ordinary flow of water, and is not required to take care of unusual and extraordinary flows of water, that is, it is not required to provide for a flood. James v. Railroad, 69 Mo. App. 437; Coleman v. Railroad, 36 Mo. App. 476; Ellet v. Railroad, 76 Mo. 518. (4) The statute in question places a liability upon a railroad company only when the natural and usual flow of surface water has been obstructed or made necessary "by the construction of such railroad." If there is no natural and usual flow of water at a given point at the time a railroad constructs its roadbed the railroad cannot be held liable for collection of water against its bank at that point if such water is made to commence to flow in that direction long after the construction of the railroad. The statute is a penal statute and must be strictly construed against plaintiff and in favor of the railroad. It does not provide that where a railroad has been built for twenty or thirty years and through some changed condition, that did not exist at the time the road was built, water is made to flow against the railroad embankment, at a certain place, the company may be required under a penalty to reconstruct its roadbed so as to conform to the new condition of things. But the statute only requires these ditches "whenever the drain of such water has been obstructed or rendered necessary by the construction of such railroad." There is no contention in the case at bar that when the railroad was constructed along the place in question there was not any usual or natural flow of water, the draining of which was obstructed by the construction of the road. There is

no pretense that any surface water ever flowed or tried to flow across that place until the flood of 1903.

*Charles M. Hay, J. W. Tincher* and *Silver & Dumm* for respondent.

(1) The defendant attempts to raise a constitutional question by alleging that the act requiring railroad companies to construct the ditches and openings required by the section under which this suit is brought, is an impairment of the contract embodied in the charter and franchise of the lessor of this defendant, granted to it by the Legislature in 1870. We do not deny that the charter and franchise constitutes a contract between the State and the Louisiana & Missouri River Railroad Company and its lessee; but we insist that the State has the right in the exercise of its police power, from time to time, to make requirements and demands of the defendant and other railroad companies in the interest of the public welfare and of the rights of property of others. Gorman v. Railroad, 26 Mo. 441; Matthews v. Railroad, 121 Mo. 298; Blackmore v. Railroad, 162 Mo. 455; Cooley on Constitutional Limitations (6 Ed.), p. 707; Cox v. Railroad, 174 Mo. 595; McFarland v. Railroad, 175 Mo. 433. Defendant cannot assert the right to obstruct the flow of water in this case by virtue of long occupancy of the site of its line of railroad. To acquire a right by prescription there must not only be long occupancy but an adverse occupancy. Smith v. Sedalia, 152 Mo. 297; 6 W. & P. Jud. Def., p. 5521; 19 Am. & Eng. Ency. Law, p. 200; Cox v. Railroad, 174 Mo. 595. (2) The "act of God" must be sole cause of damage. If negligence on the part of the defendant concurs to produce the injury, defendant is liable. Warehouse Co. v. Railroad, 124 Mo. App. 545; Wolf v. Express Co., 43 Mo. 421; Davis v. Railroad, 89 Mo. 340; Prince v. Compress Co., 112 Mo. App. 49. (3) Defendant seems to

take the position that no openings are necessary unless there is a natural and usual flow of water at a given point at the time a railroad constructs its roadbed. We do not understand it to be necessary that there be a usual, in the sense of a constant, flow of water to render openings necessary. If there be such a lay of the land that, at times of overflow, which must be expected along river bottoms, water will flow in certain channels or drains, it would clearly be incumbent on the company not to dam up such channels or drains. At the time of the construction of the Chicago and Alton road and through all the intervening years, the lay of the land in question has been the same; a drain along the Missouri river bluffs on the Callaway side.

## STATEMENT BY THE COURT.

Plaintiff's petition states, in substance, that he is the owner of sixty acres of farming land lying in Cedar City, Callaway county, Missouri, in what are known as the Missouri River bottoms; that it is the habit of said river to overflow these bottoms from the west to the east in times of high water; that defendant's railroad also extends across the Missouri River bottoms from southwest to northeast and along the east line or boundary of plaintiff's land; that the roadbed of its track is constructed of a solid earth embankment; varying in height from four to seven feet, and is not provided with culverts, openings or drains of any kind across, through or under the same for the escape of surface water, but constitutes a solid barrier for collecting such waters and causes them to back over and flood the lands of plaintiff, which would not be overflowed except for that obstruction; that the construction and maintenance of defendant's road in this condition was had and continued for more than three months before the——day of June, 1908, when the Mis-

souri River overflowed its banks and its water ran
west to east across the bottom until it reached the em-
bankment on said defendant's right of way, which re-
pelled it so that it backed over, across and upon plain-
tiff's said land, wholly covering and flooding the same,
thereby totally destroying eighteen acres of corn of
the value of $515, five acres of potatoes of the value
of $450, and twelve acres of wheat of the value of $207,
and damaging and injuring plaintiff to the aggregate
of said sums; that this loss was suffered by plaintiff
solely because of the negligent failure of defendant
to construct suitable openings across and through the
solid embankment on which the tracks of its railroad
were laid, and suitable ditches and drains along the
side of its roadbed to connect with an existing ditch
which runs alongside the roadbed of the M., K. & T.
Railway, whose track intersects and crosses the track
and roadbed of defendant, and would have afforded an
outlet whereby the waters cast back by the defendant's
embankment would have been carried off into the Mis-
souri River or elsewhere without flooding plaintiff's
land and destroying its products. The petition alleged
a second cause of action by reiteration of all the per-
tinent averments of the first count thereof, and prayed
judgment for the statutory penalty of $500 specified in
section 1110, Revised Statutes 1899, as amended by
the Act of March 14, 1907, Laws 1907, p. 169, under
which amended statute this suit was brought.

The answer of defendant was, (1) a general de-
nial; (2) a plea of inevitable accident caused by an
alleged extraordinary overflow of the Missouri River;
(3) the existence of its railroad and embankment in its
present condition for a period of thirty-five years, as
creating a prescriptive right against any recovery by
plaintiff; (4) the unconstitutionality of the act upon
which the suit was brought.

There was evidence, positive or inferential, which
tended to support all the allegations of the petition.

The jury returned a verdict for plaintiff on the first count for $950, and on the second count for $500. Defendant appealed, and assigns for error the giving and refusal of instructions, rulings on evidence, and the refusal of the court to declare the statute sued on unconstitutional.

## OPINION.

BOND, J. (after stating the facts as above).

The first constitutional point insisted upon in appellant's brief is claimed to arise upon the fact that the railroad, now in the hands of appellant as lessee, was built in 1873 under a State charter, and neither then or during the Act of 1907 did the law require such corporations to construct outlets through their railroad beds or embankments for the flow of surface water, which kind of water was then considered a common enemy to be warded off his premises by any land-owner, provided in so doing he did not collect or accumulate and cast it in a large body or unreasonable quantity upon the property of adjacent land-owners.

Corporation: Vested Charter Rights.

If we should concede these assumptions, for the argument, yet we cannot concur in the full conclusion which is drawn by appellant; to-wit, that such a state of the law became a part of the contract between the State and appellant's lessor (hence appellant as a privy) which was irrepealable or unalterable for any cause or motive whatsoever.

No contract with the State, whether by charter or otherwise, and no prescriptive right can be invoked to thwart the exercise of its sovereign power and duty to take care of the health, morals or property of the people. If there be some phases of the police power which might be bartered away—as the right of taxation for a consideration—certainly there are others—

including all the powers that are essential to the protection of the property, health and morals of its people—which no State can bind itself not to exercise by any form of agreement whatever, and which cannot be obstructed by any lapse of time, or Statute of Limitations. For these reasons the police powers of a State are divisible into two classes: (1) Such rights of internal regulation of its affairs, as not to touch the vital question of health, morals, or property of the people—these, the State may part with, because their retention is not indispensable to the preservation of society; (2) All powers of government which regulate the public health, welfare and the property rights of its people—these, no State can strip itself of, for that would render it incapable of carrying out the prime purposes of its creation. The sanctity and import of this attribute of sovereignty are recognized in the Constitution of this State; to-wit, "The exercise of the police power of the State shall never be abridged, or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of indiviuals, or the general well-being of the State." [Art. 12, sec. 5, Constitution of Missouri.] The only restrictions upon the exercise of this faculty are that its use shall be reasonably adapted to the ends for which it is given, and that it shall not infringe any right or privilege guaranteed by the Federal Constitution. The authorities and cases demonstrating these principles are uniform. [Cooley on Constitutional Limitations (7 Ed.), p. 395, note 2, et seq.; *Ibid*, p. 832, et seq.; Sloan v. Railroad, 61 Mo. l. c. 30; Mathews v. Railroad, 121 Mo. l. c. 310, 311; Campbell v. Railroad, 121 Mo. 346; Blackmore v. Railroad, 162 Mo. 461; Grannahan v. Railroad, 30 Mo. 546; Peters v. Railroad, 23 Mo. 107; McFarland v. Railroad, 175 Mo. l. c. 431; Cox v. Railroad, 174 Mo. l. c. 604, et seq.; Stone v. Mississippi, 101 U. S. 814; Gas Co. v. Louis-

iana Light Co., 115 U. S. 650; Railroad v. Mathews, 165 U. S. 1; Butchers' Union Co. v. Crescent City Co., 111 U. S. 746; 8 Cyc. 863, et seq.]

The statute sued upon was enacted to prevent the property of citizens owning lands traversed by railroads from being injured by the construction or maintenance of an embankment which would obstruct the flow of water and cause it to flood the farming land and destroy its crops. It was, therefore, an exertion of a police power of the inalienable class, and whether it affected the rights which appellant claimed from its lessor, is wholly immaterial to the validity of the act. We hold that this statute is impregnable to assault from the standpoint of the assumed vested right of the appellant to continue the maintenance and operation of its railroad contrary to its provisions. It did not destroy any vested right of appellant to maintain a solid embankment with no apertures therein for the passage of water, thereby injuring the property of others, for it had no such right, regardless of the charter or contract between the State and its lessor, or of the growth of prescription; and could not have been vested with such right without taking from the State its essential functions as a sovereign power for the purposes defined in our Constitution. [Constitution of Missouri, art. 2, sec. 4.]

Appellant makes some further attacks upon the constitutionality of the statute upon which this action is based, to the effect that the title of the amendatory act (Laws 1907, p. 169) was defective; that the act provided an excessive penalty, and failed to provide to whom it should be paid. All these, if they are not abandoned (as seems to be done in its reply brief) were resolved against the contention of appellant in the cases of Cox v. Railroad, supra; McFarland v. Railroad, supra; and Mathews v. Railroad, supra; and hence need not be again reviewed.

II.   Appellant contends that there was no drain or water course with which to connect the railroad ditches or drain or openings under its embankment prescribed by the statute.   Whether the weight of the evidence on this point was in favor of appellant is a matter with which we have no concern. There was testimony given by an engineer and some residents of the locality which tended to prove the existence of a drain or watercourse of a well-defined character, with which the railroad might have connected the openings under its embankment referred to in the statute.   The question of the existence of that drain was submitted to the jury in an instruction requested by defendant and given by the court.  [Record, p. 347.]   Granting the evidence on this point was conflicting, the verdict of the jury is conclusive.

*Existence of Drains.*

III.   Appellant assigns as error, that the injuries suffered by plaintiff were caused by an extraordinary and unprecedented flow of water.   There was testimony tending to show that the overflow of the Missouri River in 1908 carried its waters out of its banks in some places, and arose to the dimensions of what might be termed a flood. If this was the sole and only efficient cause of the injury to plaintiff's property, the rule invoked by appellant might have some application.  [Powers v. Railroad, 71 Mo. App. l. c. 543; Ellet v. Railroad, 76 Mo. 518.]   However, there was testimony from which the jury were at liberty to infer that this was not the only agency which inflicted the loss complained of by plaintiff, but that the negligence of plaintiff co-operated in that result.   The rule is well settled in this State that, where the negligence of the defendant concurs with an inevitable accident to produce injury, the person so damaged is entitled to recover.  [Wolf v. Express Co., 43 Mo. 421; Davis v. Railroad, 89 Mo. 340; Warehouse

*Act of God.*

Co. v. Railroad, 124 Mo. App. 545; Prince & Co. v. Compress Co., 112 Mo. App. l. c. 65.]

IV. Appellant complains of instruction numbered 2 given on behalf of plaintiff in that it did not require the jury to find that there were other ditches, drains or watercourses with which the statutory openings required of defendant could be connected; or, if there were any such, that they were sufficient to carry off the overflow. This point seems to be based on the failure of the court to insert after the words "to connect with other ditches, drains or watercourses" the terms "if any." The instruction is further complained of in that it did not expressly require the jury to find that such connecting ditches, drains or watercourses would be sufficient to carry off the flood water. And it is thirdly complained, that the instruction submitted to the jury whether appellant constructed suitable drains and ditches "along *each side* of its roadbed." Appellant does not set out the instruction in its brief, but a reference to the printed record discloses that its language might give rise to the contentions made by appellant. Hence, the question is, are these informalities or faults in the instruction sufficient ground for reversing this judgment? The record discloses that by instruction No. 8, requested and given on behalf of defendant, the jury were specifically directed, that if there was a depression just north of the M., K. & T. Railway track at North Jefferson which might have served as a drain or ditch, and that the Chicago & Alton Railroad might have made an opening in its track leading into such a depression, still they must find for the defendant, if they believed that the flood of water was so great that an opening through defendant's embankment which should be only large enough to conduct a quantity of water which would have been carried off by said depression, would not prevent the flooding of plaintiff's

*Instructions.*

land. If there was any error in the instruction complained of, then the same error was contained in instruction numbered 8 given for defendant; and, hence, the defendant is not in a position to secure a reversal on that account. The instruction given for appellant was clear, complete and accurately definitive of its rights, and supplied any omissions and imperfections in that contained in instruction numbered 2 given for plaintiff as to the first criticism made by appellant. As to the second criticism, it is enough to say that instruction numbered 1 given for plaintiff was supplementary of the omission complained of, and did require the jury to find that the draining of surface water was obstructed or made necessary by the railroad embankment before appellant could be required under the statute to make the statutory openings through its track. Neither as to the third criticism was there any reversible error. For if it be true that the instruction referred to the duty of the railroad to construct suitable ditches and drains on *each* side of its roadbed, still the undisputed evidence shows that plaintiff's lands were lying only on one side of the road, and the contention on the trial was as to the existence of such ditches and drains on that side only. We do not think that the jury could have been misled by this inaccuracy, especially in view of the other instructions which confined the view of the jury exclusively to the matter in issue. We rule this point against appellant.

V. Appellant finally complains that one of the witnesses was permitted to give his conclusions as to the proper place for openings through defendant's embankment, instead of a statement of the facts upon which they rested. We find by an inspection of the printed record, that when the question was first asked the court overruled the objection of appellant on the ground that an answer to the question might be necessary to convey

**Testimony: Conclusions.**

"a correct idea of the whole situation." The succeeding question put to this witness, however, required him to state exactly the point or place where such an opening could have been constructed. In reply he did mention the particular places where two openings could have been put, which would have carried off the water. We conclude, therefore, that appellant was not prejudiced by the previous general question since the witness made a competent answer to a succeeding specific question.

The judgment herein is affirmed.

PER CURIAM.—The foregoing opinion of BOND, J., in Division is adopted as the opinion of the Court in Banc, by reducing so much of the judgment as rests upon a penalty from $500 to $100. *Brown, Bond, Walker* and *Faris, JJ.,* concur; *Woodson, J.,* not sitting; *Lamm, C. J.,* and *Graves, J.,* dissent *in toto.*

## CONCURRING OPINION.

BROWN, J.—I concur in the opinion of BOND, J., in the above entitled cause, except that portion of said opinion which affirms the award of $500 to plaintiff as a penalty for failing to construct the openings in its railroad, as required by Laws 1907, p. 169, now section 3150, Revised Statutes 1909.

That law prescribes a "penalty of not to *exceed* five hundred dollars" for failure to comply with its provisions. In my judgment it was the legislative intent that the full penalty of $500 should only be given in extreme cases, when the accumulation of waters injuring the crops or property of adjacent land-owners is shown to be certain to occur at frequent intervals, thereby necessitating an immediate construction of such openings.

The fact that overflow waters had only accumulated and been held upon plaintiff's land by defend-

ant's roadbed twice during a period of ten years does not establish a complete defense to that part of plaintiff's petition counting on the penalty, but it does show a strong mitigating circumstance partially excusing the delay in constructing the openings in its roadbed.

I am, therefore, of the opinion that so much of the judgment as rests upon the penalty should be reduced to $100.

I am partly led to these views by the fact that the General Assembly of 1909 considered the maximum penalty of $500 excessive, and reduced it to $200. [Laws of 1909, p. 359.] *Bond, Faris* and *Walker, JJ.*, concur in the views herein expressed.