D. S. BROWN, Appellant, v. ST. LOUIS & SAN FRAN-
CISCO RAILWAY COMPANY, Respondent.

Springfield Court of Appeals, January 29, 1923.

1. **CONSTRUCTION OF RAILROAD:** Watercourse. A railroad com-
pany has the right to construct its road across any stream or
watercourse, but is required to restore the watercourse to its
former state or to such state as not unnecessarily to impair its
usefulness. It is likewise the duty of every railroad company
owing or operating any railroad to construct and maintain suit-
able openings across and through its right of way and roadbed,
and suitable ditches and drains on each side of the roadbed to
connect with ditches, drains or watercourses, so as to afford suf-
ficient outlet to drain and carry off the water, including surface
water, along such railroad whenever the drainage of such water
has been obstructed or rendered necessary by the construction
of such railroad. A landowner damaged by the failure of a rail-
road company to obey this statute may maintain an action for
damages.

2. **STATUTE OF LIMITATIONS.** Plaintiff may sue at any time
within five years after his injury has occurred regardless of the
length of time that defendant has maintained its roadbed un-
changed, and this because defendant can acquire no vested rights
since the Act of 1907, by maintaining its roadbed.

(541)

3. **ABATABLE NUISANCE.** A railroad embankment without adequate openings is, since the Act of 1907, whatever it may have been before, an abatable nuisance to the extent of remedying the defect, and damages caused by failure to put in sufficient and adequate openings may be sued for and recovered in successive actions when they occur within the statutory period of five years after such damage occurs.

4. **SURFACE WATER.** The openings shall be sufficient to furnish an outlet for all waters, the drainage of which may be obstructed by the railroad embankment, including surface or overflow waters, so that such waters will not back up so as to injure a landowner above or accumulate in a body and then be discharged in one place to the damage of a landowner below.

5. **INSTRUCTIONS.** The term "overflow water" should have been used in the instructions in this case instead of the terms "freshet and surface water" and when the latter terms are used in instructions, they should be defined.

Appeal from Lawrence County Circuit Court.—*Hon. Charles L. Henson,* Judge.

REVERSED AND REMANDED.

*H. H. Bloss* for appellant.

(1) It was the duty of the defendant to have made and maintained its bridge across Clear Creek so as to have permitted the passage of the waters of Clear Creek and also all surface waters, that might accumulate there and its failure to do so would subject it to the damage sustained by the adjoining landowners, caused by its neglect. Secs. 9850, 9953, R. S. 1919; South Side Realty Co. v. Ry. Co., 154 Mo. App. 364; Williamson v. Ry. Co., 115 Mo. App. 72; Cox v. Ry. Co., 174 Mo. 588; Transberger v. Ry. Co., 250 Mo. 46; Pace v. Ry. Co., 174 Mo. App. 227; Graves v. Ry. Co., 69 Mo. App. 574; Raney v. Ry. Co., 137 Mo. App. 537; Cooper v. Ry. Co., 123 Mo. App. 141; Edwards v. Ry. Co., 97 Mo. App. 103; Bunton v. Ry. Co., 50 Mo. App. 421. (2) The only instance against which the defendant would not be liable for an insufficient bridge would be an unprecedented storm which

caused a flood of such a volume as no one then living had seen in that neighborhood, otherwise it must anticipate such flood waters. South Side Realty Co. v. Ry. Co., 154 Mo. App. 364; Houghtaling v. Ry. Co., 117 Ia. 540. (3) The evidence showed that on numerous occasions the waters backed up against the defendant's bridge and railroad embankment, hence; even if the flood of 1919, was unprecedented, yet if its bridge contributed to the damage sued for, the defendant was liable, because this involves the question of whether the unprecedented flood, if such it was, was the sole cause of the damage uninfluenced or caused by any neglect of the defendant. H. A. Johnson & Co. v. Springfield I. & Ref. Co., 143 Mo. App. 441; Standley v. Ry. Co., 121 Mo. App. 177; Brink v. Ry. Co., 17 Mo. App. 177; Booker v. Ry. Co., 144 Mo. App. 273. (4) The court should have permitted the evidence offered to have been introduced, relative to the enlargement of the bridge to twice its water-carrying capacity; this was an admission of the insufficiency of the former water-carrying capacity of the bridge. Humphrey v. Ry. Co., 131 S. W. 715, 718.

*W. F. Evans, Mann & Mann* and *William B. Skinner* for respondent.

(1) Section 9850, R. S. 1919, authorizes railroad companies to construct their road across, along or upon any stream of water or watercourse . . . which the route of its road shall intersect or touch, but provides that the company shall restore the stream or watercourse to its former state, or to such state as not unnecessarily to have impaired its usefulness. R. S. 1919, sec. 9850; Culver v. Railroad, 38 Mo. App. 130; Harrelson v. Railroad 151 Mo. 482. (2) The grant of a right of way to a railroad company carries with it the right to make the necessary embankments, culverts and ditches for the proper grade and protection of the road, and if in exercising this right with due care and skill, the flow of

surface water from adjoining lands is obstructed it is *damnum absque injuria.* Benson v. Railroad, 78 Mo. 504. (3) Where there is lawful authority for the construction of a bridge over a stream the person building is liable only in case of negligence or unskillfulness in the manner of doing the work to one suffering from its interference with the running water, the maxim of the law in the circumstances being that "the water runs and ought to run as it has been accustomed to run." Abbott v. Railroad, 83 Mo. 271. (4) Damages from overflowing during an extraordinary flood, alleged to have been caused by a railroad's negligence in leaving insufficient opening in embankment, cannot be allowed unless the injury would not have occurred, unless the opening was too small. Sherwood v. Railroad, 187 S. W. 260. (5) In the matter of constructing bridges over streams or watercourses the rule is that Railroad Companies are only required to provide openings of sufficient size to carry such volume of water as could reasonably be expected to pass through them and in the giving of instructions trial courts should conform to this rule. King v. Lusk, 196 S. W. 69; Realty Company v. Railroad, 154 Mo. App. 364. (6) As to the Statute of Limitations the rule as deduced from all the authorities is that where the nuisance is a permanent structure such as a railroad bridge or dam obstructing the flow of the water of a natural stream that is bound to continue as long as it remains the same, then the entire damage, present and prospective, accrues as soon as such actual damage begins and is discoverable, and is the subject of a single action, which must be brought within the period of limitation after such accrual. Powers v. Railroad, 158 Mo. 87; Gorman v. Railroad, 166 Mo. App. 320. (7) Under repeated decisions of the Supreme Court only such issues as are made by the pleadings can be inquired into on a trial or submitted to the jury for their determination. Abbott v. Railroad, 83 Mo. 277-8. (8) In an action for damages for overflow of land charged to have been occasioned by insufficient opening in a bridge over a stream

of water evidence of repairs or changes in the bridge subsequent to injury complained of is not competent. Clonts v. Gaslight Company, 160 Mo. App. 456; Bujalo v. Basket and Box Company, 227 S. W. 844.

COX, P. J.—This case was submitted at the March Term of this year and assigned to Judge BRADLEY who wrote an opinion concurred in by Judge FARRINGTON and myself in which the judgment was reversed and the cause remanded. A motion for rehearing was filed by defendant and sustained. The cause was re-argued at this term and assigned to the writer to prepare an opinion.

Plaintiff sought damages to his lands and crops due to the alleged obstruction of a creek. The cause was tried before the court and a jury, and verdict and judgment went for defendant, and plaintiff appealed.

In the former opinion by my brother BRADLEY, a very full and complete statement of all the facts is made but for the purpose of the discussion of the questions which we now deem pertinent the following statement of the case will suffice.

Plaintiff's petition is in four counts. In the first count his cause of action is based upon the alleged failure of defendant to maintain an opening under a bridge across a creek, of sufficient size to permit the waters of the creek in times of freshet to pass. That in October, 1919, there was a flood in this creek and on account of the insufficiency of the opening under the bridge, the flow of water was obstructed to such an extent that it backed up over plaintiff's land and broke over the top of the railroad embankment and washed the embankment away and washed away the soil from part of plaintiff's land with it and thereby damaged this land. The other three counts of the petition were for alleged damages to crops on the land for the years 1916, 1917, and 1919, a separate count for each year, and were based on the opening under the bridge being too small and thereby causing the water to back up upon plaintiff's land and damage his crops.

35—211 M. A.

The answer was a general denial and plea of the five and ten years Statute of Limitations.

Plaintiff, the appellant, alleges error in the instructions to the jury and the admission and exclusion of testimony. Defendant, the respondent, contends there was no error as plaintiff claims and then makes the further point that its demurrer to the testimony, in the form of peremptory instructions asked, should have been sustained because the plaintiff on the conceded facts could not recover and therefore the judgment in its favor should be affirmed regardless of any errors at the trial.

A separate demurrer to the evidence under each count of the petition was filed by defendant. These are based on the contention that the evidence shows plaintiff's cause of action on each count to be barred by the Statute of Limitations and that the evidence does not show that the opening under the bridge caused the damage. On oral argument attention was called to the fact that there was a small bridge and opening under it maintained at a point about one-fourth mile west of the bridge over the creek and at a place where water which collected there could not get back into the channel of the creek above the bridge and if plaintiff had any cause of action, it should have been based on that bridge being too small instead of the one over the creek, or the failure to maintain other openings between that bridge and the one over the creek.

We shall consider the demurrer to the evidence based on the Statute of Limitations first.

In the former opinion filed in this case this court speaking through Judge BRADLEY, who prepared that opinion, said:

"The five year Statute of Limitations is the one applicable to causes of the character here. [Hays v. Railroad, 177 Mo. App. 201, l. c. 213, 219, 162 S. W. 266; Brown v. Railroad, 198 Mo. App. 71, 199 S. W. 707.] The evidence shows conclusively that Clear Creek has overflowed a portion of plaintiff's lands at intervals since defendant's railroad was constructed, yet no

serious damage to the freehold occurred until 1919. The damage to the freehold in 1919 was caused by the rapidity of the flow after defendant's roadbed was washed away west of the Clear Creek bridge at and near the northwest corner of plaintiff's farm.

In Hays v. Railroad, supra, Judge STURGIS, speaking for this court, reviewed at length the authorities touching upon the question of limitations. Section 9850, Revised Statutes 1919, authorizes a railroad company to construct its road across any stream of water or watercourse, but when such is done, the company is required to restore the watercourse to its former state or to such state as not unnecessarily to have impaired its usefulness. That portion of section 9850 referring to the duty of a railroad company when its road intersects a watercourse has remained without substantial change since its enactment in 1851. [Laws 1851, p. 486.] In 1907, Laws 1907, p. 169, the Legislature enacted what is now section 9953, Revised Statutes 1919. By this latter section it was enacted among other things that every railroad company owning or operating any railroad in this State should cause to be constructed and maintained suitable openings across and through the right of way and roadbed, and suitable ditches and drains along each side of the roadbed to connect with ditches, drains or watercourses, so as to afford sufficient outlet to drain and carry off the water, including *surface water* along such railroad whenever the drainage of such water *has been obstructed* or rendered necessary by the construction of such railroad. This section provides that any railroad company failing to comply with its provisions shall incur a penalty not to exceed $200 "and be liable for all damages done by said neglect of duty." A landowner damaged by the failure of a railroad company to obey this statute may maintain an action for damages. [Cox v. Railroad, 174 Mo. 588, 74 S. W. 854; Skinner v. Railroad, 254 Mo. 228, 162 S. W. 237; Murphy v. Railroad, 205 Mo. App. 682, 226 S. W. 637.] Overflow water is surface water (Goll v. Railroad, 271 Mo. 655, 197 S. W. 244),

hence under section 9953 a railroad company is under obligation to provide for the disposition of all surface water of whatever character, except from extraordinary and unprecedented floods which could not be reasonably anticipated. [Sherwood v. Railroad, 187 S. W. (Mo. App.) 260.] If plaintiff is barred it is because his injury occurred more than five years prior to the time he commenced this cause, and not because defendant has maintained its roadbed unchanged for the period of limitation. This because defendant can acquire no vested rights since the Act of 1907. In Tranbarger v. Railroad, 250 Mo. 46, 1. c. 56, 156 S. W. 694, the Supreme Court said of this act: "We hold that this statute is impregnable to assault from the standpoint of the assumed vested right of the appellant to continue the maintenance and operation of its railroad contrary to its provisions. It did not destroy any vested right of appellant to maintain a solid embankment with no apertures therein for the passage of water, thereby injuring the property of others, for it had no such right, regardless of the character of contract between the State and its lessor, or of the growth of prescription; and could not have been vested with such right without taking from the State its essential functions as a sovereign power for the purposes defined in our Constitution. [Constitution of Missouri, art. 2, sec. 4.]" The purpose of the Act of 1907 was to prevent the property of citizens owning lands traversed by railroads from being injured by the construction or maintenance of an embankment which would obstruct the flow of water and cause the flooding of farming land and the destruction of crops. [Tranbarger v. Railroad, supra.] The Act of 1907 is a legislative declaration that railroad embankments are not to be regarded as permanent structures to the extent of not requiring adequate openings to be made to afford sufficient drainage. A railroad embankment without adequate opening is, since the Act of 1907, whatever it may have been before, an abatable nuisance to the extent of remedying the defects, and damages

caused by failure to put in sufficient and adequate openings are to be sued for and recovered by successive actions at and when they occur within the statutory period, five years, after such damage occurs. [Hays v. Railroad, supra.] Since it appears that the alleged damages sued for in the instant case accrued or occurred in less than five years before the commencement of this cause, we hold that the action is not barred by the Statute of Limitation.''

We still adhere to what is there said.

On the merits of the case as affected by defendant's demurrers to the evidence, the pertinent facts and our conclusions therefrom are as follows: The land alleged to have been damaged lies west of the creek and south of the railroad right of way. The railroad maintains a bridge across Clear Creek at the northeast corner of the land alleged to have been damaged and about one-fourth mile west of the bridge is the county line and a north and south public road with a grade leading south from this railroad. Plaintiff's land at the junction of the railroad grade and the public road grade is lower than at the bridge over the creek and the railroad maintains a small opening under a bridge east of that point through which water that would otherwise be held back on plaintiff's land by the railroad grade passes, and when the creek overflows a part of the overflow water may also pass through this opening. The railroad grade extends seven or eight feet above the surface at the bridge over the creek and about five feet above the surface at the west side of plaintiff's land. The top of the grade is a little lower at the west line of plaintiff's land than at the bridge over the creek. On October 31, 1919, there was such a flood that the opening under the bridge over the creek and the small opening further west were not sufficient to permit the water to pass under the railroad track and it backed up above the railroad grade until it covered a large portion of plaintiff's land then in cultivation and finally rose to such a height that it broke over the rail-

road grade a short distance east of the county line and washed out the railroad grade and the small bridge at that point and formed such a current at that place that it washed away all the soil from a part of plaintiff's land and part of the soil from another part of it. After the waters had subsided, mud was found on the girders of the bridge over Clear Creek which demonstrated that when the flood was at its highest point the opening under the bridge across the creek as well as the opening further west was filled and the water backed up above the bridge and railroad embankment to a point above the opening under the bridge. The top of the grade where the water broke over was higher than the bottom of the girders under the bridge over the creek, so, necessarily, the opening at the creek would be full before the water could break over the grade at the point where the washout occurred.

The Statute, section 9953, Revised Statutes 1919, requires a railroad " . . . to cause to be constructed and maintained suitable openings across and through the right of way and roadbed of such railroad and suitable ditches and drains along each side of the roadbed of such railroad to connect with ditches, drains, or watercourses so as to afford sufficient outlet to drain and carry off the water, including surface water, along such railroad wherever the draining of such water has been obstructed or rendered necessary by the construction of such railroad . . ."

This statute provides that the openings shall be sufficient to furnish an outlet for all water, the drainage of which may be obstructed by the railroad embankment including surface water and overflow water is surface water. [Goll v. Railroad, 271 Mo. 655, 197 S. W. 244.] The purpose of this statute as stated by the Supreme Court in Tranbarger v. Railroad, 250 Mo. 46, 1. c. 56, 156 S. W. 694, is, "to prevent the property of citizens owning lands traversed by railroads from being injured by the construction or maintenance of an embankment which would obstruct the flow of water and cause it to

flood farming land and destroy its crops.'' The statute meant that, as nearly as practical, provision must be made to permit the water, including overflow water, to pass unobstructed by the grade of the railroad in such a way as not to cause it to back up so as to injure a landowner above or to be accumulated in a body and then discharged in one place to the damage of a landowner below.

While the statute required the railroad company to provide openings sufficient to secure proper drainage, it left it to the railroad to determine how it would discharge that duty. The railroad company could determine the size and location of all openings and construct them in its own way with no restriction except that the proper drainage must be provided. It is shown in this case that the railroad runs practically east and west across plaintiff's land while the creek at the bridge runs northwesterly and the point of the location of the small bridge, one-quarter mile west of the bridge across the creek, was some 200 ft. further down stream than the bridge across the creek and the surface of the ground at that point was lower than at the bridge across the creek. The banks of the creek some distance up-stream from the bridge at a curve in the creek were lower than at the bridge and water would overflow there before the banks at the bridge were full. This overflow and some water that drained from land on the west and south of the creek would strike the railroad embankment at the small bridge and the evident purpose of maintaining the small bridge at that place was to permit this accumulation of water to pass on and prevent its standing on plaintiff's land and was not intended, primarily, to take care of a flood such as the one complained of in this action that would overflow the banks of the stream at the bridge. It, no doubt, was intended to take care of all water that could not pass back into the channel of the creek above the bridge, but there its purpose ceased, and the only provision made by the railroad company to take care of water that would rise above the banks of

the creek at the bridge was the opening under that bridge. Having by its own choice selected that plan for taking care of the waters that would rise above the banks of the creek at the bridge, it should have made the opening under the bridge sufficiently large and, if necessary, should have extended it beyond the banks of the creek far enough to have prevented the water from backing up above the embankment far enough to cause damage to land or the crops thereon above the embankment. One of defendant's witnesses stated that if the opening under the bridge across the creek had been twice as big as it was, it would not have permitted the waters of this flood that overflowed the banks of the creek some distance above the bridge to pass, because the land sloped to the west and the water could not get back to the creek. That would be true until the flood reached a stage at which it would overflow the banks of the creek at the bridge. When it reached that stage, the channel and the banks of the creek would be entirely submerged and all the water would be in one body and would pass under the bridge, and did so pass in this flood as shown by the physical facts, but that opening was not large enough to permit the water to pass as fast as it accumulated above the embankment, and for that reason the water was held back by the embankment, and continued to rise and back up until it filled the opening under the bridge and rose above it and finally overflowed the embankment at the lowest point near the west line of plaintiff's field, washed the embankment away and carried the soil of plaintiff's land with it. The damage, if any, caused by the flood of 1919 was caused by the conditions above outlined and as to that damage, plaintiff's cause of action was properly based on the failure of defendant to maintain a sufficient opening under the bridge across the creek. The defendant could have placed other openings in the embankment, or it could have made the opening at the small bridge near the west line of plaintiff's land larger, but it did neither, and having attempted to take care of the excessive flood

water by the one opening under the bridge at the creek, it cannot now be heard to say that the other opening, which it had maintained for another purpose, was too small and that plaintiff's cause of action should have been based on that fact. As to the damage, if any, caused by the flood of 1919 the plaintiff had the right to meet defendant upon its own ground and stand on the allegation that the opening under the bridge at the creek which defendant had maintained for the purpose of taking care of the water that caused the damage was too small. Plaintiff could well have charged that his damage was caused by the failure of defendant to maintain sufficient openings without confining himself to the one under the bridge over the creek. As the petition stands, he is confined to that one opening, but on that basis we are of the opinion that the demurrer to the evidence was properly overruled.

On plaintiff's alleged error in the exclusion of testimony, Judge Bradley said in the former opinion "plaintiff sought to prove that defendant enlarged the opening under Clear Creek after the overflow of 1919." This for the purpose of showing a confession on the part of defendant that its bridge was inadequate. Objection to this evidence was sustained. Defendant, however, by its own witnesses established the fact that the bridge had been enlarged and plaintiff has no complaint in this respect but in view of another trial we hold that this character of evidence cannot be introduced over objection. [Clonts v. Gas Light Company, 160 Mo. App. 456, l. c. 475, 140 S. W. 970; Bujalo v. St. Louis Basket & Box Co., — Mo. App. —, 227 S. W. 844.] We still adhere to that position on that question.

Plaintiff also sought to establish the fact that defendant had been notified that the Clear Creek bridge was inadequate and had promised to remedy the alleged defect before the flood complained of in this case. On objection this evidence was excluded. Similar evidence was admitted, though without objection, in South Side Realty Co. v. Railroad, 154 Mo. App. 364, 134 S. W. 1034.

If it were necessary to bring to the attention of defendant specific notice that the opening was too small, this evidence would be competent, but in this case there was no question of want of notice raised. In fact it was shown that part of the railroad embankment had been washed away three times in the last ten years at or about the same place where it occurred in 1919. In view of the condition of the testimony in this case, we can see no useful purpose to be served by that testimony offered and think under the circumstances of this case, its exclusion was proper.

The court gave five instructions requested by plaintiff and one marked No. 7 of its own motion for defendant. It refused No. 8 asked by plaintiff. Other instructions asked by defendant were refused. The instructions which we deem it necessary to notice are as follows:

No. 1 for plaintiff: "The Court instructs the jury that a railroad company in constructing its bridge across a stream is bound to leave sufficient outlet or water opening for all water that may reasonably be expected to flow through such watercourse taking into consideration such freshets as might reasonably be expected to occur, in view of the size of the stream or streams, its carrying capacity and the character of the country contributing to its flow. If, therefore, the jury believes from the evidence in this case that the defendant failed to construct or maintain the bridge which crossed Clear Creek mentioned in the evidence with sufficient capacity to permit the freshets to cross under the said bridge which it should reasonably have expected would occur considering the size of the stream, its carrying capacity and the character of the country drained by it, and as a result of such neglect, if any, the plaintiff suffered the damage complained of in the petition in the several counts thereof, then the jury should find the issues in this case for the plaintiff and assess his damage as hereinafter further instructed."

Part of No. 2 given for plaintiff: "The Court instructs the jury that it was the duty of the defendant railroad company to maintain a bridge wide enough and high enough to afford an outlet or passageway sufficient for all water that might reasonably be expected to flow through the channel of Clear Creek, taking into consideration such freshets as might reasonably be expected to occur, in view of the size of the stream, width of its bottom, height of its banks, carrying capacity and the character and extent of the country contributing to its flow."

No. 7 given by the Court of its own motion is a modification of one asked by defendant and is as follows: "Unless the jury find and believe from the evidence that the creek would not have overflowed on defendant's land unless the opening under the railroad bridge was too small to carry as much water as the natural channel or banks of the river, including all surface water which it reasonably could have anticipated would come into the channel of the creek, then your verdict must be for the defendant on all counts in plaintiff's petition."

Plaintiff then asked for Instruction No. 8 which was refused. This is as follows: "The Court instructs the jury that it was the duty of the defendant to so construct its bridge across Clear Creek so as to permit an outlet or water passage sufficient to accommodate all the water whether surface water or water coming down the creek mentioned which it might reasonably have anticipated would have occurred there taking into consideration the lay of the country, the territory to be drained and the waterfall, and if you find from the evidence that it failed to do this and as a result thereof the plaintiff was damaged, as mentioned in the petition, then you should find the issues for the plaintiff."

On these instructions is to be determined whether reversible error was committed against plaintiff. In view of the testimony which we have outlined and the real issues made by the pleadings, Instructions 1 and 2 given at the request of plaintiff did not present the issues as

clearly as they should have been presented. The term "overflow" water which the jury would have readily understood was not used. Instead the terms "freshet" and "surface water" are used without being defined and it is doubtful whether by reading these two instructions alone the jury could understand just what was the duty of defendant in regard to the opening at the bridge over Clear Creek. Instruction No. 8 asked by plaintiff and refused would have aided in clearing the matter up and had it been given and the jury had found against plaintiff, he could not complain. As it was we think this instruction should have been given although it does not define "surface water." We think, however, it would have clarified Instructions 1 and 2 and would have aided the jury in determining the duty of defendant. It distinguishes between "surface water" and water coming down the creek and had this instruction been given, the plaintiff could have had no ground of complaint, but since it was not given, we think its refusal was error.

Instruction No. 7 given by the court as a modification of one asked by defendant was also erroneous. It restricts defendants' duty as to the size of the opening under the bridge too narrowly. It told the jury that an opening under the bridge which would carry the water that came down in the channel of the creek and such surface water as should reasonably be expected to flow into the channel of the creek was sufficient, while in this case the damage was caused by the water backing up and breaking over the embankment at a place distant from the channel of the creek, and the jury were, no doubt, led by this instruction to believe that defendant was not liable to plaintiff for damages caused by water rising to such an extent as to wash away the embankment at the place where the break occurred. It ought to have told the jury that it was the duty of defendant to have made the opening under the bridge large enough so that when the water rose above the banks of the creek at the bridge, this opening would permit all this excess of water to pass without backing up above the embankment.

As to the damage to the crops in 1916 and 1917 the evidence is not very clear as to whether it was caused by the water after it reached a height sufficient to submerge the banks of the creek at the bridge or was caused by water that did not rise that high. If it was caused by water that did not rise above the banks at the bridge then by reason of the fact that plaintiff has confined his allegations to the one opening under the bridge no recovery could be had for that damage under this petition.

For the errors noted the judgment will be reversed and the cause remanded. *Farrington* and *Bradley, JJ.,* concur.