POWERS et al. v. ST. LOUIS, IRON MOUNTAIN AND SOUTHERN RAILWAY COMPANY, Appellant.

Division One, June 30, 1900.

Nuisance: DEFLECTING CREEK: LIMITATIONS. Where actual damages done to plaintiff's land by overflow waters due to the negligent and defective construction of an embankment and canal, and the consequent change in the bed of a river or creek, were actual and apparent at the time such obstructions were finished, and were discoverable then to be inevitably continuous, the statute of limitations began to run at the time the obstruction was finished, although such injury gradually increased and did not become complete for sometime afterwards. The quantum of damages in such case, the injury being gradual and not due to any unusual flood, can be ascertained and measured just as well before as after the injury occurred, and all the damages, present and prospective, can be recovered in one action.

Transferred from St. Louis Court of Appeals.

JUDGMENT OF CIRCUIT COURT REVERSED.

*Martin L. Clardy* and *R. Graham Frost* for appellant.

(1) The demurrer to the evidence ought to have been sustained. The embankment and canal were permanent structures, and the damage, therefore, suffered in 1876, was an original injury, for which compensation, present and prospective, could have been recovered. The suit not having been brought within five years after the overflow of 1876, the statute of limitations barred a recovery afterwards. Bunten v. Railroad, 41 Fed. Rep. 750; s. c., 50 Mo. App. 422; Powers v. City of Council Bluffs, 45 Iowa, 652; Railroad v. Mihlman, 17 Kan. 224; Troy v. Railroad, 23 N. H. 83; Railroad v. McAuley, 11 N. E. Rep. 67; Railroad v. Maher, 91 Ill. 312; Stodghill v. Railroad, 5 N. W. Rep. 465; Railroad v. Loeb, 8 N. E. Rep. 460; Ridley v. Railroad, 24 S. E. Rep. 730. (2) The demurrer to the evidence ought to have been sustained, because the evidence showed that defendant had acquired a right by prescription to overflow the premises of plaintiffs. Roberts v. Railroad, 158 U. S. 1; Gould on Waters (2 Ed.), secs. 210 and 343; Wood on Limitations, sec. 181; Freudenstein v. Heine, 6 Mo. App. 287; James v. Kansas City, 83 Mo. 567; McGowan v. Railroad, 23 Mo. App. 204; Bird v. Railroad, 30 Mo. App. 365; Swan v. Munch, 67 N. W. 1022; Williams v. Barber, 62 N. W. 155. (3) If the embankment and canal were negligently and improperly constructed, plaintiffs' cause of action accrued upon the occurrence of the first substantial injury to the realty. The crops were destroyed, the fences were washed away and there was some abrasion of the land in the spring of 1876. Growing crops, when planted by the owner, are a part of the land. Fences are as much a part of the land as buildings. Injury to the land is regarded as permanent, and where such injuries occur, the plaintiff is required to recover in one suit

the entire damages, present and prospective, caused by the defendant's act.    Fowle v. Railroad, 107 Mass. 352; Duncan v. Sylvester, 24 Mo. 482; Gould on Waters, sec. 416; Troy v. Railroad, 23 N. H. 83; Fowle v. New Haven & Northampton Co., 107 Mass. 352; Bunten v. Railroad, 50 Mo. App. 414; s. c., 41 Fed. Rep. 744; Bird v. Railroad, 30 Mo. App. 365; Ridley v. Seaboard & Railroad Co., 24 S. E. 730.

*Edward A. Rozier* and *William Carter* for respondents.

(1) Concerning the character of nuisance sued upon, and the correlative rights and duties of the parties in this case, see 3 Sutherland on Damages (2 Ed.), secs 1033 and 1037.    "A private nuisance has been defined to be anything wrongfully done to the hurt or annoyance of the lands, tenements or hereditaments of another. . . . . . . . It may be a wrongful act which destroys or deteriorates the property of another. . . . . . . . It may be created by an affirmative act causing annoyance and damage or by neglect of some duty of preventing.    Where it is sought to make one accountable for the consequences of acts done by him upon his own lands, the question in general is not whether he exercised due care, but whether his acts caused damage."    (2) The original position taken by defendant in the court below, as well as in the Court of Appeals, that the statutes of limitations must run from the time of the erection or construction of this canal, may readily be seen to be without merit; for, plaintiffs' cause of action does not arise from the mere construction of this canal, for in its construction there was no direct invasion of any right of plaintiffs, or their grantors.    The cause of action in this case is in the negligently maintaining said canal so that damage did result.    If that damage began at a period ten years anterior to the bringing of this suit, then counsel for plaintiffs are willing to concede that the defense of the statute of limita-

tions has been well taken. If such actual damage and injury occurred at a period less than ten years before the bringing of this suit then plaintiffs' cause of action is not barred by the statute of limitations. Counsel contends that this is a case of the class of Howard Co. v. Railroad, 130 Mo. 656 and Dickson v. Railroad, 71 Mo. 575. Here we have by this court a direct and express recognition of the rule laid down in the case of Nashville v. Comer, 88 Tenn. 415, the leading case in support of the doctrine announced as distinguished from the line of cases, of which the case of Powers v. Council Bluffs, 45 Iowa, 652, is the leading exponent of the contrary doctrine. Counsel for defendants lay special weight and stress upon the Powers v. Council Bluffs case, entirely ignoring the express dissent with such case in the Howard county case.

MARSHALL, J.—Action for damages to plaintiff's land caused by an alleged nuisance maintained by defendant on its land.

In 1867 John Tullock owned the northwest quarter of section fifteen, township thirty-five north, range four east, in St. Francois county, through which tract the St. Francois river ran. He also owned the northwest quarter of the northeast quarter of section fifteen, which adjoined the first named tract upon the east.

On the 10th of July, 1867, he conveyed by deed to Thomas Allen, for the St. Louis, Iron Mountain and Southern Railway Company, "a right-of-way, one hundred feet wide with right of increasing the width of the same for necessary slopes and embankments and turnouts and with right of changing water courses and the right of taking a supply of water and of borrowing or wasting earth or stone for the purpose of constructing and operating their said railway over, through and upon" said tracts of land. This deed was

duly recorded on May 19, 1868.  Under this authority the defendant began building the railroad embankment and canal in the fall of 1867, and finished it in the summer of 1868, and the embankment and canal have remained in the same condition ever since.  The embankment is a solid dam which intersects a bend in the St. Francois river, and deflects that river through the canal so as to cut off the bend and cause the river to flow along (practically) the south side of the embankment.  The conditions will be easily understood by reference to the following plat, which was made by the county surveyor and used on the trial in the circuit court.

The portion of the land lying east of the river and marked B on the plat, lies partly in the northwest quarter of section fifteen and partly in the northwest quarter of the northeast quarter of section fifteen, but it does not appear what part lies in each. The only evidence bearing on this matter is the testimony of Daniel L. Ashbury, the county surveyor, which is as follows:

"Q. What does this letter 'B' mean? A. There is 22 acres in there and this around to there is 30, and 1 to 2 is the length of the canal.

"Q. Now, will you state the character and quality of land in those fields originally? A. Good river bottom land; good land.

"Q. As to the floods that washed away crops, you have no knowledge? A. No, sir; I never saw the waters overflow the fields."

On cross-examination he said:

"Q. What section was that? A. Fifteen.

"Q. What quarter section? A. This west part from the river right through there is the northwest quarter of section 15.; part marked 'B' is in the northwest quarter of the northeast quarter section 15.

"Q. What scale is that, how far would the section line be here from the old bed of the river? A. About 250 feet.

"Q. Now, as I understand it, part of that field marked 'B' is the northwest quarter of section 15, and the balance would be in the northwest quarter of the northeast quarter section 15? A. Yes, sir."

This is here referred to because the petition only refers to the land in the northwest quarter of section fifteen, and asserts no claim to damages to any land in the northwest quarter of the northeast quarter of section fifteen. When the work of building the embankment and canal was begun,

the grantor John Tullock was alive, but during its progress he died and C. T. Tullock became the owner, and the latter was employed by the contractors, under the defendant, who built the embankment and canal, as overseer of the men and teams.

C. T. Tullock, sold the land to the Powers brothers in 1882, for $6.25 an acre, aggregating for the 537.52 acres in the whole farm $3,359.50, and the embankment and ditch were then in their original condition and no change had occurred in either up to the date of the institution of this suit.

The land was overflowed whenever there was high water, and the crops and fences were washed away. In 1876 or 1879 and in 1893 the floods and freshets were extraordinary. The canal intersected the old bed of the river at the east end of the canal (marked 2 on the plat) and by reason of striking the river at right angles, it gradually caused the east bank of the river at that point to wear away, so as finally to force the water across the old bed of the river and to the east thereof, and thus to form a new bed for the river, which, after extending a short distance to the east of the old bed of the river, turned towards the south until it united again with the old bed of the river.

In the ordinary stages of the water the canal was sufficient to carry off all the water, but was inadequate for the purposes when the water was high. The same is true of the original bed and banks of the river. There is no evidence that the canal is any less efficient than the river formerly was.

This action was begun in the November Term 1895 of the St. Francois County Circuit Court. The petition contains seven counts. The first count is as follows:

"Plaintiffs state that they are now and were, at the date of the grievances hereinafter complained of, owners in fee and in possession of the following described real estate, to-

wit, the northwest quarter of section fifteen, township thirty-five north, range four east, situate in the county of St. Francois and State of Missouri, through which said tract of land the river St. Francois runs.

"That many years ago the defendant company built its railroad embankment and cut or excavated a ditch or canal by the side of said embankment through plaintiffs' said tract of land for the distance of some sixteen hundred and twenty-four feet, completely damming up and changing the original channel of said St. Francois river from its original course and channel for a long distance.

"Plaintiffs state that the said defendant, its agents, servant and employees, did not construct, erect and maintain the embankment and canal or ditch in a scientific, skillful, careful and prudent manner, as it was their duty to do, but on the contrary, did construct the same in an unskillful, careless and neglectful manner and still uses the same so constructed, notwithstanding its condition, owing to its construction in such unskillful, careless and negligent manner, from said date to the time of bringing this suit. That said embankment completely dammed up said St. Francois river, turning the original channel into said canal or ditch almost at right angles with the original stream and, in consequence of the size of the canal, which was constructed too small to have sufficient outlet to pass the accumulated waters through it in time of heavy rains and freshets in said river, thereby causing said river to back up and overflow plaintiffs' said lands and farm on the side thereof next to said river; and thus causing said river to wash deep gullies and trenches through plaintiffs' farm on said tract of land and thus destroy the same on the west side thereof. That said defendant so constructed said canal as to cause the waters of said river at all times to flow directly against a large body of plaintiffs' said farm, thus wearing away the bank of the river that formerly protected

that portion of plaintiffs' said farm and causing the river to overflow the same and wash large and deep gullies and trenches through that portion of plaintiffs' said farm on the said side thereof and to destroy said portion of plaintiffs' said farm on the said east side thereof.

"That the defendant company did not at the time of constructing said embankment and canal or ditch, or at any time thereafter, nor has it up to this date, in any manner, protected or attempted to protect the bank of plaintiffs' said lands and fields against overflows and abrasions of the banks thereof, either by levees, embankments or by rip-rapping the same, but, on the contrary, willfully, negligently and carelessly allowed and permitted said St. Francois river to overflow and wash the same away as aforesaid, thereby destroying the same, and plaintiffs say that said injury and damages in the manner aforesaid were occasioned by the wrongful, unskillful, careless and negligent conduct and acts of defendant, its servants and agents, in and about the changing the course of said stream by the means aforesaid and by the failure of said defendant in any manner to protect plaintiffs' said lands and fields from overflow and wash by said river as aforesaid.

"Plaintiffs therefore state that, by reason of the premises aforesaid, they have been damaged in the sum of three thousand dollars, for which they pray judgment."

The remaining six counts ask for $200 damages on each of such counts, alleged to have been done to the crops from overflows in the years 1889, 1890, 1891, 1892, 1893 and 1894. The answer is, first, a general denial; second, special pleas of the five year and ten year statutes of limitation; third, an admission that defendant built the embankment and canal in 1867-8, and an averment that they are in the same condition now as when originally constructed; fourth, an averment that the embankment constitutes the defendant's

road bed; fifth, the deed and license from plaintiffs' grantors to the defendant to construct the embankment and canal and change the course of the river; and, sixth, a plea of estoppel. The jury found for the plaintiffs on the first count of the petition, and assessed their damages at the sum of fifteen hundred dollars. No finding or judgment was entered as to the other six counts of the petition. After proper steps the defendant appealed to the St. Louis Court of Appeals. A majority of the judges of that court reversed the judgment of the trial court. [Powers v. Railroad, 71 Mo. App. 540.] But the minority of that court believed the decision of the majority was in conflict with the decision of this court in Howard County v. Railroad, 130 Mo. 652, and therefore the case was certified to this court, under the provisions of section 6 of the amendment of 1884 to article 6 of the Constitution, and under that provision the case is here for review as if on original appeal.

## I.

The majority of the St. Louis Court of Appeals held: First, that the first count, upon which alone the plaintiffs had judgment and which was therefore the only count before the court, is damages "for abrasion of plaintiffs' lands caused by the alleged defects in the original construction of a permanent work," and hence "the rule established by all the authorities, that when permanent structures injure the beneficial enjoyment of an estate, or tend to destroy it, the damages are computable, and must be sued for in one action," and that upon this view, the cause of action accrued in 1876 or 1879 when the first big overflow occurred, and was therefore barred by the ten year statute of limitations; and also, "upon a plea of prescription to this count, the only inquiry is, when did a cause of action first arise on account of the existence of the permanent canal and embankment?" And, second,

Vol. 158 mo—7

that while the petition charges that the canal is too small to carry off the waters which accumulate "in time of heavy rains and freshets," still it does not allege that the original bed of the river was adequate for this purpose or that the canal is less adequate than the original bed, and that the proof also was insufficient to support such a theory even if it had been alleged.

On the other hand the minority opinion, while conceding the correctness of the first proposition of law asserted in the majority opinion, holds that the cause of action can not be considered to have accrued from the erection of a permanent construction until it has become *apparent* how much the damages will amount to, and in this case, the quantum of damages was not made apparent by the big overflow of 1876, and did not become apparent until 1890, and as this suit was begun in November, 1895, it is not barred by limitation.

Both opinions are predicated upon the rules of law laid down by BRACE, P. J., in Howard County v. Railroad, 130 Mo. 652. The difference between them consists simply in the application of these rules to the particular facts in this case. The rules laid down in Howard Co. v. Railroad, *supra.* were: "While there is some conflict between the American cases on this subject, the rule sustained by the great weight of authority seems to be that when by wrongful acts a permanent nuisance is created and the injury therefrom is direct, immediate and complete, so that the damages can be measured at the time of the creation of the nuisance in one action, the statute will begin to run from the creation of the nuisance. On the other hand, when the injury, as in this case, is not complete so that the damages can not be measured at the time of the erection of the nuisance in one action but depends upon its continuance and the uncertain operation of the seasons, or of the forces set in motion by it, the statute will not begin to run until actual damage has resulted therefrom."

Under this view it is plain that in the case at bar the embankment and canal are permanent structures, that the canal at the east end thereof (marked 2 on the plat) struck the old bank of the river at right angles and consequently would gradually wear away that bank until a curve or bend was created which would reduce the pressure upon the bank and that the permanent structure (or rather the defective construction of the canal at its east end in the manner indicated) was the direct and immediate cause of the injury, but that such injury did not at once become *complete*, yet that *actual* damage began the instant the permanent structure was finished and that such *actual* damage continued and would inevitably continue until the contact of the water with the old bank of the river at point 2 on the plat, wore away enough of the old bank to form a bend or curve in the river, which would reduce the pressure of the water on the bank and stop the gradual wearing away thereof.

It is plain therefore that the rules laid down in the Howard county case, while appropriate and adequate to solve the issues and facts in that case, are not decisive of the facts in this case. In the Howard county case, the facts were that in 1885 the defendant threw large quantities of rock in Doxey creek, over which the plaintiff had a bridge, and deflected the current of the stream from its natural course and caused it to flow against the north pier of the bridge, thereby undermining it and in consequence of which in 1892 the pier was so injured that the plaintiff had to repair it. The first substantial injury to the pier was noticed in 1890, and in 1892 the injury had become so great that the pier had to be taken down and rebuilt. The suit was begun in 1893. It is clear from this statement that the throwing of the rocks in the creek was the direct and immediate cause of the injury, and that *actual* damage was not discoverable until 1890 (about five years after the current was deflected against the pier)

and that the damage was not *complete* until 1892, when the pier had to be taken down and rebuilt. Whereas in the case at bar the defective construction of the canal at its east end, in the manner pointed out, was the direct and immediate cause of the injury to the plaintiffs' land and such injury became at once *actual* and was at once discoverable, and that such actual damage, small at first, must, necessarily under the laws of physical science, *gradually* increase and would not become *complete* until the bank was washed away and a bend or curve formed in the river. This also, is clearly shown to be the natural effect of such construction of the canal, and also the gradual injury, culminating in the gradual formation of the curve or bend, by the testimony of the county engineer, Samuel L. Asbury, as is shown by the following excerpt from his testimony: "Q. Now, as you examined it on that occasion, will you state whether these abrasions was the work of a sudden flood, or gradual? A. It was gradual. The way the water goes through depends upon the height of the river. At the east end of the canal it was worn by force of water; it was worn along here gradually."

In the Howard county case it did not at once become *apparent* that the deflection of the waters of the creek against the rock pier of the bridge would undermine and injure it, and the effect on the pier was not discoverable until five years after the waters were thrown against it, whereas in the case at bar the effect on the dirt bank of the river was discoverable at once and the injury began at once, and was bound to continue (unless the bank was rip-rapped or some effective method employed, if indeed any such method be known to science, which does not appear in this record to be the fact, to stop the wearing away) until a curve or bend was created, and this result and the extent of such damage were measurable and ascertainable as soon as the canal was constructed.

Upon the testimony adduced neither the floods of 1876

(or 1879 whichever it was) nor 1893 were responsible for the injuries complained of, for, as the county surveyor testified, the injury was done gradually and not by any sudden flood.

Moreover, plaintiffs' counsel very properly says: "Plaintiffs do not insist that defendant owed any duty to them to provide a canal that would carry off the water of an extraordinary flood or freshet. Any damage resulting from such extraordinary flood or freshet could not be guarded against by defendant because defendant could not be held liable to provide against such contingencies. Nor, on the other hand, can it well be claimed that if defendant was not liable for injuries caused by an unusual freshet, could it found a prescriptive right for damage done by this freshet. For in an action by plaintiffs or their grantors for injuries caused by this extraordinary flood, it would have been sufficient defense to have so shown, thereby defeating plaintiffs' right of recovery." This is unquestionably the law and the common sense of the matter. [Flori v. St. Louis, 69 Mo. 341; Dougan v. Champlain & Co., 56 N. Y. 1; Hubbell v. Yonkers, 104 N. Y. 434; O'Malley v. Railroad, 113 Mo. 319.] The effect of the big overflows must therefore be eliminated from consideration. The effect of the usual and natural consequences of such a defective construction of the canal alone remains. Counsel for plaintiffs state the issue thus: "The cause of action in this case is in the negligently maintaining said canal so that damage did result. If that damage *began* at a period ten years anterior to the bringing of this suit, then counsel for plaintiffs are willing to concede that the defense of the statute of limitations is well taken. If such actual damage and injury occurred at a period less than ten years before the bringing of this suit then plaintiffs' cause of action is not barred by the statute of limitations."

It needs no argument or expert testimony to supple-

ment the physical fact and the testimony of the county engineer that the injury to the plaintiffs' land at the east end of the canal *began* as soon as the water commenced to flow against the east bank of the old bed of the river. Thereafter it was only a question as to the quantum of damages, and this could have been ascertained and measured just as well before as after it occurred. This being true, the cause of action accrued to the owner of the land at once, and the damages were recoverable in a single action, for in its legal sense the damage was then complete. [Gould on Waters, sec. 416; Troy v. Railroad, 23 N. H. 83; Fowle v. Railroad, 107 Mass. 352; Ibid, 112 Mass. 334; Bunten v. Railroad, 50 Mo. App. 414; Ibid, 41 Fed. Rep. 744; Bird v. Railroad, 30 Mo. App. 365; Ridley v. Seaboard Railroad, 24 S. E. 730.]

In Fowle v. Railroad, *supra*, it was said: "The embankment was a permanent structure, which without any further act except keeping it in repair, must continue to turn the current of the river in such a manner as gradually to wash away the plaintiff's land. For this injury, the plaintiff might recover in one action entire damages, not limited to those which had been actually suffered at the date of the suit; and the judgment in one of such actions is a bar to another like action between the parties for subsequent injuries from the same cause."

In Bunten v. Railroad, *supra,* ELLISON, J., said: "It seems definitely settled, upon authority, that where the nuisance consists of a work or erection, which is permanent in its character, and which is necessarily injurious, the whole injury arises generally upon the completion of the work, the entire damage, present and prospective, accrues at once, and is the subject of a single action, which must be brought within the period of limitation from the erection of the nuisance."

The first count of the petition is multifarious, in this,

that it predicates a right of action upon an original defective construction of the canal, and also upon a negligent maintenance of the canal. And, seemingly, counsel for plaintiffs concede that as the canal was completed in 1868, and this suit was not begun until 1895, the cause of action is barred as to the first claim, unless the damage did not become *apparent* until 1890, and therefore counsel rely mainly upon the second ground and show that the embankment is in as good condition now as it ever· was because it is rip-rapped, while the east bank of the river (plaintiffs' land) is washed away, because it was not rip-rapped or otherwise properly maintained to prevent it from gradually washing away. Or in other words they practically claim that this is a continuing nuisance, and that the damages are apportionble and can be sued for separately, until eternity, as often as a further quantum of damage is done. This is untenable. The evidence shows, and common sense demonstrates, that the damage has been and must be gradual, and that it began as soon as the permanent canal was built, and must continue until a bend is formed which will stop. the wearing away of the bank. This began in 1868. At that time C. T. Tullock owned the land, and he helped the defendant to construct the canal, under the license granted by his grantor to the defendant. He owned the land until 1882, and all the time (fourteen years) this process of gradual wearing away was going on. He made no complaint. The cause of action to complain and to recover full compensation for all damages. present and prospective, was therefore barred as to Tullock, when he sold the land to the plaintiffs in 1882. They took the land in this condition, used it, saw the process of wearing away going on (if the curve or bend had not already been made and the wearing away ended, which is not clear from the record) from 1882, to·1895 (thirteen years), and made no complaint, and at the expiration of twenty-seven years from the time the cause of action accrued, and the damages

had become apparent, and susceptible of computation, they sued the defendant and recovered nearly half as much as damages as they paid for the whole tract of 537.52 acres of land.

The claim is clearly barred by limitation. The original construction of the canal was unworkmanlike, defective and negligent, and necessarily produced the results complained of, but the time has long since passed when an action therefor could be maintained. The structure was permanent, the damage apparent and measurable, and could only be recovered in a single action. It is in no proper sense a continuing nuisance, where the damages are apportionable.

For these reasons the judgment of the circuit court is reversed. All concur.