JAMES L. HAYES, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, December 11, 1913.

1. NUISANCES: Permanent: Damages: Only One Recovery. Where a nuisance is of such a permanent character that a single recovery can be had, including the whole damage past and future resulting therefrom, there can be but one recovery, the cause of action is single and accrues once for all.

2. ——: Temporary and Continuing: Damages: Each Recurrence a New Right of Action. Where a nuisance is of a continuing (abatable) nature each recurrence gives rise to a new cause of action and successive actions may be maintained from time to time for the damages accruing.

3. ——: Statutes of Limitation: Applicable to Actions for Nuisances: Statute Begins to Run When. Statutes which limit the time within which actions may be brought apply to actions for damages on account of nuisances. Where the nuisance is permanent the period runs from the time the injury commences. Where the nuisance is a continuing (abatable) one an action for injuries from the continuance may be brought after the lapse of more than the statutory period since the creation of the nuisance, but the recovery in such case is limited to damages for the statutory period preceding the commencement of the action.

4. ——: Permanent: Continuing: Method of Distinguishing Between. To determine whether a nuisance is a permanent or continuing (temporary) one, the character of the source or cause of the injury as to its being permanent or temporary, is the proper guide rather than the character of the injury itself.

Hayes v. Railroad.

5. ————: Injuries by Overflow: Action Single, When. Though each recurring injury may be temporary, like injury to crops by overflow, and the frequency and extent of same be dependent to some extent on the seasons, yet, when the same results from a permanent cause and nuisance and necessarily recurs at more or less frequent intervals, an action to recover for same is single and successive actions will not lie.

6. ————: Permanent: Definition. A permanent nuisance is one of such a character and existing under such circumstances that it will be presumed to continue indefinitely. Its permanency may be either from the inherent nature of the injury itself or from the nuisance or cause of the injury being permanent.

7. ————: Continuing: Definition. Abatable, temporary and continuing nuisances are synonymous terms. Such nuisances consist of acts done or particular uses of property of such character that they may continue indefinitely or may be discontinued at any time either voluntarily or by compulsion.

8. ————: Permanent: Cause of Action: Limitation of. Where injuries resulting from a nuisance are permanent because recurring at intervals the cause of action is single and the Statute of Limitation bars it as effectually where the nuisance causing the injuries is permanent as where the injuries themselves are inherently permanent.

9. Railroad Embankments: Insufficient Drainage. A railroad embankment is essentially a permanent structure in the absence of a statute requiring changes therein to afford drainage or other cause, and, in such case, damages resulting to crops from overflow caused by insufficient openings through same are original, must be sued for in one action and the Statute of Limitations begins to run from the occurrence of the first injury.

10. ————: Railroad Embankments: Insufficient Openings for Water. Under Sec. 3150, R. S. 1909, a railroad embankment, though constructed before the passage of said section, which is without sufficient openings to allow the passage of water in times of high water is to that extent an abatable nuisance and each successive injury caused thereby can be sued for by successive actions within the period of limitation after the occurrence of such injury.

Appeal from Butler County Circuit Court.—*Hon. J. C. Sheppard*, Judge.

AFFIRMED.

*W. F. Evans* and *W. J. Orr* for appellant.

The trial court erred in refusing to direct a verdict for the defendant at the close of all of the evidence because the undisputed testimony shows conclusively that plaintiff's action was and is barred by limitation. Powers v. Railroad, 158 Mo. 87; Sutherland on Damages, pp. 403-407; Adams v. Railroad, 18 Minn. 265; Powers v. Council Bluffs, 45 Iowa, 655; Fowle v. New Haven Co., 112 Mass. 334; Levee District v. Barton, 92 Ark. 406; Railroad v. McCutchin, 80 Ark. 235; Railroad v. Biggs, 52 Ark. 240; Railroad v. Morris, 35 Ark. 622; Railroad v. Anderson, 62 Ark. 360; Turner v. Overton, 86 Ark. 406; Gould on Waters, 416; 2 Farnham on Waters, 586; Prieb v. Ames, 104 Minn. 419; Railroad v. Twine, 23 Kan. 585; Railroad v. Maher, 91 Ill. 312.

*Phillips, Lentz & Phillips* for respondent.

(1) When the wrong done by a nuisance does not involve the entire destruction of the estate, or its beneficial use, but may be apportioned from time to time, separate actions must be brought to recover the damages so sustained, and a former suit will be no bar to a recovery in another action for damages suffered subsequent to the institution of the first suit. Van Hoozier v. Railroad, 70 Mo. 148; Dickson v. Railroad, 71 Mo. 579-80; Givins v. Van Studiford, 86 Mo. 159; Paddock v. Somes, 102 Mo. 237; Doyle v. Railroad, 113 Mo. 286; Charles v. Railroad, 124 Mo. App. 301; Ivie v. McMunigal, 66 Mo. App. 441; Powers v. Railroad, 71 Mo. App. 542. (2) Where the injuries sustained by reason of a nuisance consist in the destruction of crops from year to year, the plaintiff will not be limited to a single action, but may sue from time to time as often as the damage occurs. Dickson v. Railroad, 71 Mo. App. 579; Van Hoozier v. Railroad, 70 Mo. 148; Charles v. Railroad, 124 Mo. App. 301;

Barnett v. Levee Dist., 125 Mo. App. 66. (3) The injury inflicted by the construction of the embankment did not go to the entire value of the estate, but was of occasional recurrence and varied in extent with the volume of water thrown upon the land. The injury is a continuous one, susceptible of periodical apportionment, and therefore, capable of being redressed by successive actions. Van Hoozier v. Railroad, 70 Mo. 148-9; Howard v. Railroad, 130 Mo. 656; Barnett v. Levee Dist., 125 Mo. App. 66; Charles v. Railroad, 124 Mo. App. 301.

STURGIS, J.—The plaintiff owns a farm along the east side of St. Francis river in Stoddard county, Missouri. He acquired this land in 1909 and 1910. The defendant railroad was constructed across this land by another railroad company in 1902, and was purchased by the defendant company in 1907, and has been operated by it since that time. This suit, commenced in 1911, is for damages to plaintiff's farm and crops alleged to have been caused by the railroad embankment causing the water to back up and overflow such land. The plaintiff recovered and defendant appeals.

The plaintiff's petition is in three counts, although he recovered only on the third. The first count states that just above the northern boundary of plaintiff's said lands a large slough or watercourse about one hundred and twenty feet wide and about twenty feet deep runs off to the southeast from said point through the lands of plaintiff, and divides into five prongs or branches forming a natural watercourse with a channel and well-defined banks; that during every rise of the St. Francis river amounting to as much as five or six feet a large volume of water passes out through the said slough or watercourse and the several prongs or branches thereof into the low lands to the east thereof for some miles where it again

gathers into another slough or watercourse and the
said waters again flow back into the said St. Francis
river; that the defendant in the construction of its
said railroad through plaintiff's said lands, con-
structed and ever since maintained a solid embank-
ment several feet high over and across three of the
prongs or branches of the said slough or watercourse;
that across the two principal branches or prongs of
the said slough or watercourse, the defendant con-
structed and has ever since maintained small open-
ings in the embankment of its said road, but which
openings are entirely insufficient to carry the volume
of water which passes from the said river through
the said slough or watercourse; so that at every con-
siderable rise of the said St. Francis river, the said
embankment, so constructed and maintained by the
defendant with the insufficient openings therein,
caused the said waters flowing through the said slough
or watercourse to be dammed or backed up on the
plaintiff's lands to such an extent that the waters on
the upper side, next to the river, are from one to three
feet higher than on the lower side of said embank-
ment; that thereby large portions of plaintiff's lands
are caused to overflow which had never been over-
flowed before the construction of said railroad em-
bankment, thereby preventing the plaintiff from mak-
ing use of his lands so caused to be overflowed as
aforesaid, during all the time of high water in the
said St. Francis river; that by the construction and
maintaining of said embankment, with its insufficient
openings, defendant has at all times since its con-
struction caused and is now causing a present and con-
tinuing nuisance, damage and injury to plaintiff's
said lands; that by reason of the overflow of his lands
caused by the construction and maintaining of said
road embankment with its insufficient openings as
aforesaid, he has been deprived of the use of the said

lands during a large portion of the time for the last six years; for all which he asks $1000 damages.

The second count is based on the facts set forth in the first count and alleges that in the manner and because of such facts and the embankment across the said slough his lands to the extent of seventy acres on which he had a crop of growing corn was overflowed during "a very considerable rise" of said river in July, 1905, the water being thrown and held back by said embankment on the said land, destroying his crops for that year to the value of $1000. The third count is similar in all respects to the second count, being predicated on the facts stated in the first count and asks $1000 damages for loss of his corn crop on the same land for the year 1910, due to an overflow from the same cause, to-wit, "a considerable rise" in the river in July in that year and the water not being allowed to pass off through this slough by reason of the solid embankment with only small openings.

The defendant's answer alleges that the roadbed of defendant was constructed just as it now is in 1902 by the St. Louis, Memphis & Southeastern Railroad Company, from which company the defendant purchased said railroad in 1904, in the condition it now is and has operated the same in that condition ever since; that plaintiff's cause of action, if any he has, accrued against the said St. Louis, Memphis & Southeastern Railroad Company as the builder of said roadbed and not against this defendant. The defendant also pleads the five and ten-year Statute of Limitations.

The case was submitted to the court on the evidence of plaintiff alone and the admissions made by the parties, so that the facts are admitted practically as stated in the petition and answer.

The plaintiff testified that at times of low water in the river the slough in question served as a means of draining surplus water into the river, but that

whenever the river became "two-thirds bank full" it commenced flowing the other way; and in high water about one-fourth the volume of the river escaped through this slough, or rather did so before the railroad built the embankment across it. The embankment across the slough is some distance away from the river. Plaintiff did not own this land at the time the railroad constructed the embankment but was familiar with it and said that he noticed that as soon as the embankment was built that the openings were too small and that the water overflowed more of the land than before; that the river gets out of its banks every year; that this high water and overflow occurs every year, but not always when there was a growing crop; 1905 was one year when the high water came during the crop season and 1910 was another; but this was not the highest water. He described the conditions resulting from high water as being that the water would be two or three feet higher on the side of the railroad embankment next to the river than on the other side, thus backing the water over his land to the extent of about eighty acres and holding it there for a much longer time than before the railroad was built. In this manner plaintiff lost the seventy acres of corn in 1910, for which this suit is prosecuted, and for which he recovered.

The sole question submitted for determination is whether or not the cause of action stated in the petition is barred by limitation. That question is determinable by the further question of whether the injuries complained of in the third count belong to the class of permanent injuries to land, which accrue once for all to the then landowner as a single cause of action by the erection of a structure permanent in its nature and which must be redressed, if at all, by a single action brought within the limitation period; or to that class of injuries temporary and continuing in their nature where each successive injury is sev-

erable and constitutes a distinct cause of action accruing at the time of the particular injury and which may be sued for within the statutory period after such accrual. The courts and law-writers have generally recognized this distinction. It is stated thus in 29 Cyc. 1254: "Where a nuisance is of such a permanent character that a single recovery can be had, including the whole damage past and future resulting therefrom, there can be but one recovery, but where the nuisance is of a continuing (abatable) nature, each continuance gives rise to a new cause of action and successive actions may be maintained for the damages accruing from time to time;" and again, at page 1260: "Statutes limiting the time within which actions may be brought apply to actions for damages for nuisances, and where the nuisance is of a permanent character the period runs from the time when the injury was done or the structure complained of erected; but where the nuisance is a continuing one an action for injuries from the continuance may be brought after the lapse of more than the statutory period since the creation of the nuisance, although in such case the recovery is limited to damages for the statutory period preceding the commencement of the action."

It is also apparent that if the injuries caused to this land by the erection of this railroad embankment belong to the first class of permanent injuries, producing a single cause of action, then no cause of action accrued to the plaintiff as he was not then the owner of the land and none accrued against defendant as it did not erect the nuisance or own the same until long afterward. It is *res inter alios acta.*

The difficulty here, as in most cases, is in determining to which class of injuries the one here sued for belongs. Some confusion arises from the meaning of the terms used by the courts and text-writers in describing and distinguishing the two classes of injury. What are sometimes called "continuing in-

juries" might be understood as being the same as permanent or interminable injuries when in fact intended to mean temporary or terminable injuries. Then it should be borne in mind that it is the character of the source or cause of the injury as to being permanent or temporary rather than the character of the injury itself that determines to which class it belongs. In 29 Cyc. 1154, these terms are defined thus: "A permanent nuisance is one of such a character and existing under such circumstances that it will be presumed to continue indefinitely, and as a rule consists of some building or structure. Nuisances consisting of acts done, or particular uses of property, may be properly termed *continuing* when they are of such a character that they may continue indefinitely, or on the other hand may be *discontinued at any time*." The permanent injury, a cause of action for which is single and accrues once for all, may be permanent either from the inherent nature of the injury itself, as going to the destruction of the estate or its beneficial use, or from the nuisance or cause of the injury being permanent. The effect is permanent whether arising from a single act or from a constantly recurring series of acts from the same permanent cause.

The courts frequently lay down as a test to determine whether the injuries are permanent and to be redressed by a single action that the damages must be such as "go to the destruction of the estate or its beneficial use." By this, however, it is not meant that the land itself must be destroyed in whole or in part as by washing away the soil or covering it with gravel or rock. The beneficial use is destroyed by flooding it with water or turning loose noxious gases thereon just as effectually as by either of the other methods just suggested. Moreover, the result is the same whether the water stands on the land all the time, recurs at frequent intervals or only at such intervals

177 Mo. App. 14

as renders the growing of crops thereon impossible or precarious. The difference is in degree only. If the cause of the flooding be permanent, this of itself renders the result permanent though arising at more or less rare and irregular but surely recurring intervals. Thus in Powers v. Railroad, 71 Mo. App. 540, 543, the court said: "In framing the first count of the petition for abrasions of their lands caused by the alleged defects in the original construction of a permanent work, plaintiffs merely followed the rule, established by all the authorities, that when permanent structures injure the beneficial enjoyment of an estate, or tend to destroy it, the damages are computable, and must be sued for, in one action." This language is approved by the Supreme Court in Powers v. Railroad, 158 Mo. 87, 97, 57 S. W. 1090.

In Powers v. The City of Council Bluffs, 45 Iowa, 652, 656, 659, a case often approved by the courts of this state, the court said: "While no infallible test can be applied to enable us to determine whether a structure is permanent or not, inasmuch as nothing is absolutely permanent, yet, when a structure is practically determined to be a permanent one, its permanency, if it is a nuisance and will necessarily result in damages, will make the damages original. . . . After the ditch was constructed and the water of the creek first began to work upon plaintiff's land, its continuance was just as certain as that water would flow in the creek unless changes were made therein by human hands. Its continuance would just as certainly be an injury as that the floods of the creek would wash the soil and earth through which the ditch was dug. It follows that plaintiff's cause of action then accrued for all injury sustained, or that in the future would be suffered. The very cause of action for which this suit was brought then existed."

"When a nuisance produces a permanent and irreparable physical injury to person or property so

that the entire damage is immediately estimable, all damages, both past and prospective, are recoverable in one action, and a recovery in one action is a bar to any subsequent action. The same rule applies where the *source* of the injury is permanent in its nature and will continue to be productive of injury, independent of any subsequent wrongful act." [21 Ency. of Law, 2 Ed. 732-3.] And this same work, page 731, 732, in speaking of temporary nuisances where every continuance is a new nuisance for which a new action will lie and a recovery for one injury is not a bar to a subsequent injury, says: "These principles, however, are applicable only to nuisances which are *abatable* or productive of temporary injury only, or which may not result in further injury. They are based upon the theory that the law will presume neither the continuance of wrongdoing nor the infliction of an injury which is contingent." It is readily seen that a permanent injury may be caused by a purely temporary or abatable nuisance, as the washing away of soil, etc. On the other hand the injuries in themselves may be purely temporary, as drowning out or washing away of crops, discharge of sewage or noxious gases, etc., and are permanent only because the nuisance causing same is permanent. The injuries themselves would terminate with the cause but the cause being permanent the injury is permanent.

The cause of action is single and the Statute of Limitation bars it where the injuries are permanent because the nuisance causing them is permanent just the same as if the injuries are inherently permanent. In James v. Kansas City, 83 Mo. 567, 570, the court, quoting from Powers v. Council Bluffs, 45 Iowa, 652, says: "Whenever the nuisance is of such a character that its continuance is necessarily an injury, and when it is of *a permanent character* that will continue without change from any cause but human labor, there the

damage is an original damage and may be at once fully compensated."

The case of Bunton v. Railroad, 50 Mo. App. 414, well illustrates this principle. In that case the railroad built an embankment across a running stream diverting the water somewhat but constructing an open waterway under a bridge. This was somewhat narrow and was allowed to gradually fill up with drift and debris, flooding plaintiff's land, washing away his crops, etc. After several years the railroad completely filled up this outlet and constructed a solid embankment. It resulted in two or three suits for damages being brought at different times. The court, page 422, stated the general rule as to permanent injuries as follows: "It seems definitely settled, upon authority, that where the nuisance consists of a work or erection, which is permanent in its character, and which is necessarily injurious, the whole injury arises generally upon the completion of the work, the entire damage, present and prospective, accrues at once, and is the subject of a single action which must be brought within the period of limitation from the erection of the nuisance. (This language is approved in Powers v. Railroad, 158 Mo. 87, 102, 57 S. W. 1090). [Gould on Waters, sec. 416; Troy v. Railroad, 23 N. H. 83; Powers v. Council Bluffs, 45 Iowa 652.] And in such case the party erecting the nuisance (not his grantees or successors) is alone liable. [Bisor v. City of Ottumwa, 70 Iowa, 145; C. & A. Ry. Co. v. Maher, 91 Ill. 312.] This doctrine should be understood with this qualification: If the nuisance is on one's own land and does not of itself work the injury when erected, then the limitation will not begin to run until the first injury happens and he who owns or maintains it at that time will be liable." As to the particular damages for separate years then in suit the court held that so long as the railroad maintained the open way for the water to pass under its track, although its negligent action

in permitting it to partially fill up caused overflow, yet the nuisance was not permanent as the open way might be restored at any time and the recurring damages could be recovered by successive suits; but after it was made a solid embankment as part of the roadbed then it became permanent and all subsequent injuries accrued once for all, must be sued for in one action and was barred in five years. The court said: "The nuisance here, as originally erected was not necessarily injurious or permanent in character, nor was it originally, of itself, of such nature that it might not have been kept in such condition as not to have been the cause of damage. . . . Up to the time of its becoming permanent, by filling up the space, it could not be said that it would be permitted to become so, and plaintiff could not be allowed to recover more than the damage done him prior to the time of bringing suit. . . . The wrong was upon defendant's own land and originally consisted in allowing the bridge to become choked; and continuous actions might have been brought (on damage happening) for the continuous wrong, for it was yet a wrong which defendant might be expected to cease doing. But when it became *fixed* and *permanent as a railroad embankment,* it became necessarily injurious. . . . At that time it could as well be seen that future damages would follow from the flowing of high waters as that rain would fall. Defendant was then at that time liable for the present and prospective damage, and such could have been recovered by plaintiff in one action. The Statute of Limitations, therefore, began to run at that time on plaintiff's whole damage, present and prospective. . . . Since the permanent establishment of the embankment in June, 1883, he has had but one cause of action, and that as before stated, is for the loss of the beneficial use of his land. He sued specifically for such loss in September, 1889, but at that time it was barred by the five year Statute of Limitation, and

should not have been allowed." It is also said in this case that the defendant as succeeding to the title of a former owner could not be held liable if "the injury would be attributable solely to the acts of defendant's predecessor, unaided by any act of omission or commission by defendant."

In the above case the court held that the damages resulting from flooding land, whether as permanent injury to the land or as destroying crops from year to year, could not be recovered in an action brought more than five years after the railroad embankment causing the same became a completed structure.

In a suit for damages caused by the same railroad embankment, mentioned in the foregoing case and between the same parties, in the Federal court, 41 Fed. 744, 750, the court said: "We are now brought to the question as to when the cause of action before the court accrued. There is authority of high character for the proposition that the railroad bridge constructed over the creek in question was essentially a permanent structure, not liable to change. As such, the Statute of Limitation would begin to run against the cause of action from the time of the first overflow occasioning any damage to the plaintiff, for which the plaintiff had a cause of action, in which he could have recovered as for a permanent injury to the freehold, because it was then made apparent that the property was liable to perpetual injury. [Powers v. Council Bluffs, 45 Iowa, 652; Stodghill v. Railroad Co., 53 Iowa, 341, 5 N. W. Rep. 495; Troy v. Railroad Co., 23 N. H. 83; James v. City of Kansas, 83 Mo. 567; Bird v. Railroad Co., 30 Mo. App. 365.]" This is approved by our Supreme Court in Powers v. Railroad, infra.

In Powers v. Railroad, 158 Mo. 87, 103, 57 S. W. 1090, the defendant constructed a solid and permanent embankment across the channel of a river forcing it through a new channel along the right of way and emptying at right angles into the old channel on plain-

tiff's land. This caused the bank to wear away, resulting in flooding and washing plaintiff's land. The court said: "Or in other words they (plaintiffs) claim that this is a continuing nuisance, and that the damages are apportionable and can be sued for separately, until eternity, as often as further *quantum* of damages is done. This is untenable. The evidence shows, and common sense, demonstrates, that the damage has been and must be gradual, and that it began as soon as the permanent canal was built, and must continue until a bend is formed which will stop the wearing away of the bank. This began in 1868. At that time, C. T. Tadlock owned the land and he helped the defendant to construct the canal. He owned the land until 1882 and all the time (fourteen years) this process of gradual wearing away was going on. He made no complaint. The cause of action to complain and to recover full compensation for all damages, present and prospective, was therefore barred as to Tadlock when he sold the land to plaintiff in 1882." [See same case, 71 Mo. App. 540, 542, stating this same rule.] In Bird v. Railroad, 30 Mo. App. 365, 378, where the only damages sustained were flooding of crops, the defendant constructed an embankment across a stream with a stone culvert to let the waters through. This culvert was too small for the purpose and caused back water and flooding. The court said: "The stone culvert was essentially a permanent structure, which could not be assumed to be liable to change." Hence it was held that a cause of action for all injuries accrued once for all and if not sued for within the statutory period is barred. This case is approved by Powers v. Railroad, 158 Mo. 87, 102, 57 S. W. 1090. Another case cited with approval by the Supreme Court in Powers v. Railroad, 158 Mo. 87, 102, 57 S. W. 1090, is Ridley v. Railroad, 24 S. E. (N. C.) 730, in which the court said: "A railway company that has constructed its road under lawful authority creates neither an abatable pub-

lic nuisance nor a continuing private nuisance by failing to leave sufficient space between embankments, or by means of culverts for the passage of the water of running streams, in case of any rise in the streams that might reasonably be expected; and the injury due to that cause may be compensated for by the assessment of present and prospective damages in a single action. . . . The measure of damages is the difference in the value of the plaintiff's land with the railway constructed as it is and what would have been its value had the road been skillfully constructed. [Cadle v. Railroad Co., supra.] The Statute of Limitations begins to run in such cases, not necessarily from the construction of the road, but from the time when the first injury was sustained. [Van Orsdol's Case, supra, at page 473, 56 Iowa, and page 379, 9 N. W.]'' The case of Fowle v. Railroad, 107 Mass. 352, and 112 Mass. 334, is likewise approved by the Supreme Court and announces this same doctrine. In fact, all the cases cited and approved by the Supreme Court as the basis of its decision in Powers v. Railroad, supra, announce this doctrine.

In a note to Gulf Railroad v. Mosely (U. S. Circuit Court of Appeals), 161 Fed. 72, 20 L. R. A. (N. S.) 885, itself a well-considered case, the editor sums up the cases in this way: "A majority of the cases hold as indicated by the cases gathered in this note, that whenever a dam or embankment obstructing a stream is of a permanent character, and its construction and continuance are necessarily an injury, the damage is considered original, and may be recovered in one action, and in such case the Statute of Limitations begins to run upon the construction of the dam or embankment, or at least from the time of the first injury; and the one damaged cannot rely on the theory that every continuance of a nuisance is a fresh nuisance." In the late case of Gorman v. Railroad, 166 Mo. App. 320, 326, 148 S. W. 1009, the court stated the rule thus:

"As to the Statute of Limitations, the rule, as we deduce it from the authorities, is, that where the nuisance is a permanent structure which causes damage and is bound to continue to do so as long as it remains the same, then the entire damage, present and prospective, accrues as soon as such actual damage begins and is discoverable, and is the subject of a single action, which must be brought within the period of limitation after such accrual." [Citing the case of Powers v. Railroad, 158 Mo. 87, 57 S. W. 1090, and the cases cited as the basis of that decision, most of which have been noted in the course of this opinion.]

The question of whether the nuisance itself as the cause of the injury is perminent in its character or is temporary and liable to be abated, either voluntarily or involuntarily, at any time, is the controlling factor in determining whether the injury resulting therefrom is of the permanent class, accruing once for all and to be sued for in one action, or is of the temporary, abatable class, in which the injuries are severable and are to be sued for as they occur. In Pinney v. Berry, 61 Mo. 359, 367, the court said: "But it is obvious that this rule (recovering the whole damage in one action) has no application to such nuisances as may be removed the day after the verdict, or for the continuance of which a second or third may be maintained, or which may be abated at the instance of the injured party, by the order of a competent court." [See Ivie v. McMunigal, 66 Mo. App. 437, 441; Foncannon v. City of Kirksville, 88 Mo. App. 279, 284.] In Carson v. City of Springfield, 53 Mo. App. 289, 295, the court said: "The injury done to the plaintiff's property by reason of the change in the grade of the streets must be considered as permanent and entire, and for the recovery of which but one action is necessary. [Sheehy v. Cable Road, 94 Mo. 574; Babb v. Curators, 40 Mo. App. 173; Givens v. Van Studdiford, 86 Mo. 149; James v. City of Kansas, 83 Mo. 567; Bird v. Railroad, 30 Mo. App.

365.] The general rule is that, whenever the nuisance or improvement is permanent in its character, or when the injury flowing therefrom is permanent, regardless as to whether the nuisance remains or is abated, the entire damage must be assessed in one action. The measure of damages in such cases is the difference in the market value of the property affected before and after the making of the improvements, or the erection of the nuisance. . . . When the nuisance or cause of the injury may be removed or remedied at any time, the measure of damages is the actual damage sustained up to the date of the institution of the suit. Damages accruing subsequently must be recovered in successive actions. [Pinney v. Berry, 61 Mo. 360; Brown v. Railroad, 80 Mo. 457; Smith v. Railroad, 98 Mo. 20; Paddock v. Somes, 102 Mo. 239; Van Hoozier v. Railroad, 70 Mo. 145; Dickson v. Railroad, 71 Mo. 575; Benson v. Railroad, 78 Mo. 504.]'' In Scheurich v. Light Co., 109 Mo. App. 406, 426, 84 S. W. 1003, the court held that plaintiff could not recover as for permanent injury to his land for overflow when he was also seeking to have the dam causing such injury abated. In Kellogg v. Kirksville, 132 Mo. App. 519, 112 S. W. 296, the court says that in a similar case (for discharge of sewage into a stream passing on plaintiff's land) that court had held that such damages were temporary and apportionable and could be recovered by repeated actions. [Fincannon v. Kirksville, 88 Mo. App. 279.] But because of the ruling of the Supreme Court to the contrary in Smith v. Sedalia, 152 Mo. 283, 53 S. W. 907, and particularly on the second appeal of the same case (Smith v. Sedalia, 182 Mo. 1, 81 S. W. 165), the injury is regarded as from a permanent source and to be recovered in a single action.

In the present case it was conceded at the trial that the railroad embankment in question was erected and had been and would be maintained as a permanent

structure, but that must have reference to its use and integrity as a railroad and not to the size of any opening through such embankment. Thereafter the overflows on this land were as certain to occur as that high water would occur in St. Francis river, provided that the railroad embankment and the size of the opening remained permanent.

The five-year Statute of Limitations is the one applicable to this class of cases. [DeGoefroy v. Bridge Co., 179 Mo. 698, 721, 79 S. W. 386; Smith v. Sedalia, 152 Mo. 283, 53 S. W. 907; James v. City of Kansas, 85 Mo. 567.]

There can be no doubt that where the cause or source of the injury is *permanent* and *nonabatable* and the resulting damages go to the total or partial destruction of the land or continuously prevent its beneficial use in whole or in part, as by washing away the soil, covering the same with rock, constant flooding of land or mines, continuous discharge of sewage, noxious gases, etc., then the cause of action accrues once for all and must be sued for in one action within the statutory period of limitation. The authorities are practically unanimous to this extent. And it follows as a corollary to this that the cause of action accrues in such cases against the party erecting the permanent nuisance and in favor of the owner of the land at the time of such erection or the first resulting injury.

Nor do we think that where the nuisance is permanent the fact that the injury is the destruction of growing crops and the like from flooding land in times of high water only, where the frequency of such floods and damage therefrom is uncertain and dependent on the seasons and action of the elements and the damages are susceptible of periodical apportionment, then that such cases form an exception to the general rule and that successive actions may be brought whenever the damages actually accrue. Most of the cases on this subject are collected in the notes to three cases in the

Lawyers' Reports Annotated, New Series—Gulf Railroad v. Moseley, 161 Fed. 72, 20 L. R. A. (N. S.) 885; Turner. v. Overton (Ark.), 20 L. R. A. (N. S.) 894; Priebe v. Ames, 116 N. W. 829, 17 L. R. A. (N. S.) 206. The annotations to the first case group the cases relating to damages caused by railroad and similar embankments; the second, the cases relating to ditches and drains and the third to milldams. The conflicting authorities are noted at length but space forbids a further notice of the same here. In the note to each of said cases the editor states that the weight of authority is that in case the dam, embankment or ditch causing the injury is a permanent structure the Statute of Limitations begins to run against the right of action to recover damages for injuries from the time the dam, embankment or ditch is constructed or the first injury is sustained.

In 2 Farnham on Waters, p. 860, it is said: "If a permanent obstruction is erected, so that it casts water across the boundary line onto the land of the upper owner, the injury is complete at the time the obstruction is erected and the injury done; and there is no ground for holding that a right of action for damages may be carried along for a period of twenty years when the Statute of Limitations says that it shall be barred in six years. The only logical rule is that, if the upper owner wishes to recover damages for his injury, he must bring this action within the time named by the Statute of Limitations."

The only point left to be determined is whether a railroad embankment when built with insufficient or no opening through the same so as to afford an adequate outlet for surface water or a natural watercourse is to be regarded as a permanent structure, i. e., not subject to change with reference to making or enlarging such opening. That such embankment may be maintained on its right of way without essential change and that it is a permanent structure so far as necessary to serve

its purpose as an integral part of the railroad and that it cannot be abated in whole or in part so as to affect or impair the integrity of the railroad, is beyond question. Many cases, some of which have been cited, go further and expressly hold and many others assume that such an embankment is a permanent structure even to the extent of including the absence and insufficiency of openings through the same. These cases go on the assumption that when a railroad embankment becomes a completed structure with no openings therein or one inadequate to permit the flow of water, surface or natural, then an injured landowner must accept the situation and act on the theory that such embankment, even as to the absence or size of the opening for flowage of water, is permanent and unchangeable. This doctrine is founded, to some extent at least, on the common law doctrine of surface water, in force in this State where not changed by the statute, which permits landowners, inclusive of railroads, to improve same by obstructing or diverting such water *ad libitum*, if done without recklessness. [Abbott v. Railroad, 83 Mo. 271; Cox v. Railroad, 174 Mo. 588, 606, 74 S. W. 854; Moss v. Railroad, 85 Mo. 86; Schneider v. Railroad, 29 Mo. App. 68, 75.]

This common law rule, however, was at an early day so modified by statute as to require ditches and drains to be constructed along the sides of railroads. [Cox v. Railroad, supra.] In 1907 (Laws of 1907, p. 169) it was further modified by requiring "openings across and through the right of way and roadbed of such railroad," which are therein shown to mean, "openings, culverts and trestles" sufficient to "carry off the water, including surface water." In Tranbarger v. Railroad, 250 Mo. 46, 156 S. W. 694, it is held that this act is an exercise of the police power of the State, applied to all railroads in the State, whether built before or after the act took effect, and that all railroads must so change their roadbeds as to conform

thereto. This act, now section 3150, Revised Statutes 1909, further provides that the landowner, on notice and refusal of the railroad so to do, may "cause such ditches, drains, openings, culverts or trestles to be constructed and maintained" at the expense of the railroad company. The purpose of this statute is declared by the Tranbarger case, supra, to be as follows: "The statute sued upon was enacted to prevent the property of citizens owning lands traversed by railroads from being injured by the construction or maintenance of an embankment which would obstruct the flow of water and cause it to flood the farming land and destroy its crops."

This act is a legislative declaration that railroad embankments are not to be regarded as permanent structures or nuisances to the extent of not requiring adequate openings to be made to afford sufficient drainage. An embankment without such opening is, since said legislative enactment, however it may have been before, an abatable nuisance to the extent of remedying the defects, and the damages caused thereby are to be sued for and recovered by successive actions at and when they occur within the statutory period of limitation after the same actually accrues. The cases of Van Hoozier v. Railroad, 70 Mo. 145; and Dickson v. Railroad, 71 Mo. 575, were decided on this theory without the aid of the legislative enactment of 1907, just mentioned, but they are not in harmony with the general and later authorities of that period. In the case of Charles v. Railroad, 124 Mo. App. 293, 301, 101 S. W. 680, the court held that, because of a decree of court in a condemnation proceeding providing for an opening through a railroad embankment which the railroad had failed to make, the court would not regard the same as a permanent structure, all damages arising from which must be sued for in one action, as the railroad probably would, and, if not, could be made to construct the opening. The decree in that case was

not more effectual in that respect than is the statute in this case.

It results that the plaintiff had a right to sue and recover for the specific injury caused by the overflow of 1910, and the judgment will be affirmed.

*Robertson, P. J.,* concurs in the result. *Farrington, J.,* concurs.